**In re Sevan H. BOUDAKIAN, Debtor.**

**Sevan H. BOUDAKIAN, Plaintiff,**

**v.**

**Zepour BOUDAKIAN, Karkour Khajadourian, and Stephen J. Fortunato, Jr., Defendants.**

**Bankruptcy No. 90–12233.
Adv. No. 91–1023.**

United States Bankruptcy Court,
D. Rhode Island.

Feb. 7, 1992.

---

**15.** *See supra* n. 7.

Andrew S. Richardson, Boyajian, Harrington & Richardson, Providence, R.I., for debtor, plaintiff.

Thomas A. Tarro, III, Fortunato & Tarro, Warwick, R.I., for defendants.

Jason Monzack, Kirshenbaum & Kirshenbaum, Cranston, R.I., trustee.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on October 7, 1991 on the Debtor's Complaint to determine the dischargeability of debts owed to his former wife, Zepour Boudakian, to her counsel, Stephen Fortunato, Esq., and to her father, Karkour Khajadourian. In his Complaint, the Debtor also seeks damages from the Defendants for their alleged willful violation of the automatic stay, 11 U.S.C. § 362(h), and for contempt of a previous order of this Court.[1]

---

**1.** Count V of the Debtor's Complaint alleges that Zepour Boudakian's request for attorney's fees on January 4, 1991 was a willful violation of our January 11, 1991 order, which held, inter alia, that the automatic stay applied to the Family Court action until the instant determination as to dischargeability.

## BACKGROUND

The Debtor and Zepour Boudakian were married in Syria on December 6, 1987, after having known each other for five days. It appears that the marriage was one of "arrangement." They lived together for approximately fourteen months, and during that time they moved to Rhode Island. There are no children of the marriage.

Their relationship deteriorated, and on September 24, 1990, the Rhode Island Family Court entered a Final Judgment dissolving the marriage between Sevan and Zepour, finding, inter alia, that Sevan had exercised excessive control over Zepour during the marriage, had physically injured her, and had concealed marital assets in anticipation of the divorce. The Family Court also found that $5,000 in Sevan's possession had been "entrusted to [him] by [Zepour's] father ... in trust and for safe keeping...." *Boudakian v. Boudakian,* C.A. P89–2278, slip op. at 2 (R.I.Fam.Ct. Sept. 24, 1990).

The Family Court ordered Sevan to turn over the $5,000 to Karkour Khajadourian, to pay Zepour $6,000 as "her share of the marital assets," and to pay her attorney a fee of $5,000 "as she has no estate of her own." *Id.* at 2–3. We are not aware that Sevan has complied with any part of the order.

On Friday, December 14, 1990, Sevan filed his Chapter 7 petition in this Court, listing his former wife, Zepour, her father, Karkour Khajadourian, and attorney Fortunato as his major creditors.

On the following Monday, December 17, 1990, a hearing was commenced before Family Court Master John O'Brien, on Zepour Boudakian's motion to adjudge the Debtor in contempt for his failure to make the ordered payments. It is undisputed that at some point during that proceeding (but not prior to its commencement), it was revealed to Master O'Brien that Sevan Boudakian had filed a bankruptcy petition. Nonetheless, the hearing continued, and at the conclusion, Master O'Brien found Sevan to be in willful contempt of the Family Court's final judgment. Master O'Brien also ordered Sevan to be held at the Adult Correctional Institutions (ACI) until he complied with the terms of the September 24, 1990 order.

On Thursday, December 20, 1990, there was a hearing in this Court on the Debtor's emergency motion to be released from custody at the ACI. We granted the request, ruling inter alia that:

> *as a preliminary matter only, and for purposes of the instant emergency motion only,* ... the automatic stay should apply, pending a determination of the applicability of § 362 *on the merits.*

After full consideration of all the pleadings and arguments, and for the reasons given above, we decline to order the Family Court Order of December 18, 1990 null and void, and that portion of the debtor's request for relief is DENIED. Instead, it is our intent merely to suspend the effect of said Order until such time as this Court can hear and determine a properly brought complaint to determine the dischargeability of the debts in question. Because of the seriousness of the debtor's conduct as found, after hearing, by the Family Court, both with respect to his pre-bankruptcy activities and his willful violation of the Family Court Order, the debtor, Sevan Boudakian is ORDERED to file within 20 days a complaint to determine dischargeability, naming the affected creditors as defendants. Said creditors are ordered to file their answers to the complaint within 10 days thereafter. A hearing will be scheduled as soon as practicable after the filing of these pleadings. At the conclusion of that litigation, if it is determined that the debts in question are dischargeable according to applicable bankruptcy law, then the contempt order of the Family Court requiring the debtor to pay said debts will be moot. *If it is determined, however, that all or any of said debts are nondischargeable, or are not part of the debtor's estate, then the Family Court Order incarcerating the debtor shall be fully reinstated, without further hearing, pursuant to the terms set forth therein.*

*Boudakian v. O'Brien (In re Boudakian),* A.P. No. 90–1178, slip op. at 4–5 (Bankr. D.R.I. Jan. 11, 1991) (emphasis added) (footnotes omitted).

At a continued Family Court hearing on January 4, 1991, Master O'Brien considered Zepour Boudakian's request for attorneys' fees in connection with the contempt action. Although neither Sevan nor his attorney were present, Master O'Brien ordered the Debtor to pay Fortunato $2,000 forthwith, presumably as a separate post-petition obligation of the Debtor. Master O'Brien acknowledged the effect of the automatic stay, stating "this Court declared the stay was sufficient, at least for the present time, to bar the incarceration of Sevan Boudakian, but it did not oust the Family Court from jurisdiction over the question of attorney's fees that were not listed on the Bankruptcy Petition, or that were incurred after the filing of the Bankruptcy Petition...." *Boudakian v. Boudakian,* C.A. P89–2278, slip op. at 2 (R.I.Fam.Ct. Jan. 7, 1991).

### DISCUSSION

Section 523(a)(5) provides an exception from discharge for any debt—to a spouse or former spouse of the debtor—

> to a spouse [or] former spouse ... of the debtor for alimony to, maintenance for, or support of such spouse ... in connection with ... a divorce decree ... or property settlement, but not to the extent that—
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

While the literal wording of the Family Court Judgment is of major concern to this Court, we are required under § 523(a)(5)(B), as the Debtor correctly argues, to independently scrutinize said de-cree, in a bankruptcy context, to determine whether the Family Court judge's intent comports with his/her written expression thereof. For example, we must examine whether the Family Court order, which clearly describes the award to the Debtor's former wife as a division of the marital assets, and not as alimony, is in fact not "in the nature of" alimony or support. *Id.*

### A. *The Debt to Zepour Boudakian*

■ The burden of proof is with the party contesting the dischargeability of the debt in question. *Weeden v. Monahan (In re Monahan),* 125 B.R. 697, 699 (Bankr. D.R.I.1991); *Gartenberg v. Kranz (In re Kranz),* 100 B.R. 475, 476–77 (Bankr. E.D.Mo.1989); *Newton v. Fontaine (In re Fontaine),* 14 B.R. 10, 11 (Bankr.D.R.I. 1981).[2] Also, in this case we begin with a presumption that the award to Zepour is not alimony, because of Master O'Brien's unequivocal treatment of the issue: "the Defendant–Counterclaimant, with an income of approximately Two Hundred and Thirteen ($213.00) Dollars per week, is better off financially [than] when she first arrived here from Syria and was unemployed, and therefore her claim for alimony is denied." *Boudakian v. Boudakian,* P89–2278, slip op. at 2 (R.I.Fam.Ct. Sept. 24, 1990).

In light of the specificity of Master O'Brien's finding, and because it comports with applicable bankruptcy guidelines regarding the determination of such issues, we accept and adopt the Family Court's denial of alimony, particularly in the absence of any contradictory evidence. Master O'Brien went on to order that "the Plaintiff-husband shall pay to the ... wife the sum of Six Thousand ($6,000.00) Dollars as *her share of the marital assets....*" *Id.* (emphasis added). Many Bankruptcy Court decisions support the view that a marriage like this one, of short

---

**2.** This remains so even though the Debtor is the Plaintiff in the instant action. The Debtor was ordered by this Court to file the instant complaint to determine the dischargeability of the debts in question. *See Boudakian v. O'Brien (In re Boudakian),* A.P. No. 90–1178, slip op. at 4–5 (Bankr.D.R.I.1991). Because of the policy favoring liberal construction of discharge, *see In re Monahan,* 125 B.R. at 699–700, the burden remains on the party opposing discharge, even where the objecting party is the defendant in a § 523 complaint.

duration, without issue, and where the financial condition of the non-debtor spouse had not materially declined, would result in a finding of property distribution, as opposed to alimony or support. *See, e.g., Hopkins v. Hopkins (In re Hopkins)*, 18 B.R. 309, 311 (Bankr.D.R.I.1982); *In re Fontaine*, 14 B.R. at 11.

In addition, while the doctrine of res judicata does not preclude this Court from considering evidence extrinsic to a family court decree in determining the dischargeability of a particular debt, no such evidence has been presented here. *See Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Accordingly, we adopt the Family Court's finding that the debt to Zepour is a division of marital assets, and is not in the nature of alimony or support. Therefore, said debt is determined to be dischargeable, and it is so ordered.

### B. *The Award to Zepour Boudakian's Attorney*

■ We next consider whether the counsel fee awarded to Stephen Fortunato, Esq. survives the bankruptcy. Generally, the dischargeability of fee awards depends upon the nature of the underlying debt, absent clear evidence to the contrary. *Romano v. Romano (In re Romano)*, 27 B.R. 36, 38 (Bankr.M.D.Fla.1983).

■ In this instance, the attorney fee award does not appear to be in the nature of property distribution. "As the Defendant–Counterclaimant clearly has a limited income from which she must pay her daily expenses, and as she has no estate of her own, the Plaintiff is ordered to pay a counsel fee to [her] attorney, Stephen J. Fortunato, Jr., Esq." *Boudakian v. Boudakian*, P89–2278, slip op. at 3 (R.I.Fam.Ct. Sept. 24, 1990). We view this award to be in the nature of alimony or support, in light of the reference by the Family Court to the

former wife's modest financial means, and we have no difficulty reconciling this with the Family Court division of marital assets, *supra. See In re Kranz*, 100 B.R. at 477 (evidence that attorney fee award is in the nature of support may warrant such a finding). *See also Tilley v. Jessee*, 789 F.2d 1074, 1078 (4th Cir.1986). The pre-petition attorney fee debt is therefore non-dischargeable.[3]

### C. *The Claim of Karkour Khajadourian*

Finally, we address the question whether the $5,000 in the possession of the Debtor is dischargeable as to Karkour Khajadourian, under § 523.

This issue cannot be resolved by reference to the language of the Family Court order alone, although we begin our analysis there. Master O'Brien found that the $5,000 award to Karkour Khajadourian was "money that was entrusted to Sevan Boudakian for safe keeping and which ... has never been returned." *Boudakian v. Boudakian*, P89–2278, slip op. at 2 (R.I.Fam.Ct. Sept. 24, 1990).[4] There is no basis or need to disturb or alter that finding. However, it does not fully address, for our purposes, the question whether this obligation to Khajadourian is a "debt" which may be discharged under § 523.

■ Under the Code, a debt is defined as a liability or a claim. 11 U.S.C. § 101(12). A "claim," in turn, is broadly defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). It includes all legal and equitable obligations of the debtor. *See Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) ("Con-

---

3. The Family Court order of January 7, 1991, awarding Stephen Fortunato an additional attorney fee of $2,000 is a post-petition obligation of the Debtor, and is not dischargeable, and was not obtained in violation of the automatic stay. As to the enforcement and/or collection of that obligation, we defer to the Family Court.

4. We accept the Defendants' argument that Rhode Island law gives Family Court judges jurisdiction to determine the existence of a trust, such as we have here.

gress chose expansive language in definitions of 'claim' and 'right to payment'"); *Kelly v. Robinson,* 479 U.S. 36, 50, 107 S.Ct. 353, 361 n. 12, 93 L.Ed.2d 216 (1986) (the Code's definition of "debt" is broadly crafted; other Code provisions and legislative history all support a broad reading of the definition). The Supreme Court has rejected the notion that a "debt" must arise from a traditional debtor-creditor relationship. *Davenport,* 495 U.S. at 558, 110 S.Ct. at 2130–31. Although *Davenport* dealt with the definition of a *criminal* restitution obligation in a Chapter 13 case, the court had little difficulty characterizing that obligation as a "debt."[5] *Id.* at 562, 110 S.Ct. at 2133. In this case, we see no reason to treat the Family Court instruction to pay Mr. Khajadourian as anything other than a "debt" within the Code's broad definition thereof.[6]

As for the question whether said debt is dischargeable under § 523, it clearly is not included within the § 523(a)(5) exception as to alimony, maintenance, or support. Just as clearly, however, it does fall within § 523(a)(4), which excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

The Family Court determined that the Debtor was acting in a fiduciary capacity while holding Khajadourian's money, and we give collateral estoppel effect to that finding. *See Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980). In addition, the Family Court judgment was not appealed, and we therefore are bound by the finding that a trust was created under Rhode Island law, and that the corpus should be returned by the trustee (Debtor) to the *cestui que* trust (Karkour Khajadourian).

"Defalcation" does not require the level of wrongdoing that is necessary in an action for "fraud" or "embezzlement." *See Gravel v. Roy (In re Chris J. Roy, a Law Corp.),* 130 B.R. 214, 217 (Bankr. W.D.La.1991) (citing Mark S. Summers, *The Exception to Discharge in Bankruptcy for Defalcation by a Fiduciary,* 92 Com.L.J. 314, at 317 (1987)); *Lee v. Crosswhite (In re Crosswhite),* 91 B.R. 156, 160 (Bankr.M.D.Fla.1988). "[A] defalcation may exist where even the merest deficit is caused by the debtor's misconduct, even if the debtor's conduct does not benefit him...." *Crosswhite,* 91 B.R. at 160.

Judge Learned Hand defined the term as "innocent defaults, so as to include all fiduciaries who for any reason were short in their account...." *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 511 (2d Cir.1937). Although there is dictum in the Family Court decision that the Debtor had secreted and/or concealed assets during the marriage, and that the Debtor "never returned" the $5,000, there is no finding that he was ever requested, or under any other obligation to do so during the marriage. Therefore, and notwithstanding the Debtor's disruptive and abusive behavior generally, there is no basis to support a finding that a § 523(a)(4) defalcation occurred prior to the September 24, 1990 judgment. After that unappealled judgment however, and before the filing of his bankruptcy petition, the Debtor's failure to return the $5,000 to Khajadourian constitutes a "defalcation while acting in a fiduciary capacity." In fact, the Debtor's conduct was so egregious that the Family Court saw fit to incarcerate him until he complied with the terms of its order.

For all of the foregoing reasons, it is ORDERED that:

---

5. Although the Criminal Victims Protection Act, Pub.L. 101–581, § 3, 104 Stat. 2865 (1990), largely overruled the holding in *Davenport,* the Act did not disturb the Court's definition of "claim" under the Code. *See Johnson v. Home State Bank,* —— U.S. ——, —— n. 4, 111 S.Ct. 2150, 2154 n. 4, 115 L.Ed.2d 66 (1991); *Placer U.S., Inc. v. Dahlstrom (In re Dahlstrom),* 129 B.R. 240, 241 n. 3 (Bankr.D.Utah 1991).

6. The Defendants only obliquely suggest that the existence of the trust should except the $5,000 from property of the estate and therefore free the Debtor from the strictures of the Code, *cf. Begier v. Internal Revenue Service,* 496 U.S. 53, 58–59, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990), and we see no need to analyze that issue for the purpose of this decision.

1. The debt to Zepour Boudakian in the amount of $6,000 is determined to be dischargeable;

2. The pre-petition debt to Stephen Fortunato, Jr., Esq. in the amount of $5,000 is not dischargeable;

3. The post-petition $2,000 debt to Stephen Fortunato, Jr., Esq. is nondischargeable;

4. The debt to Karkour Khajadourian in the amount of $5,000 is not dischargeable.

As to Counts IV and V of the complaint, wherein the Debtor seeks damages for willful violation of § 362(a), the Court finds based upon the totality of circumstances, that there was no willful violation of § 362(a), and that an award of damages is therefore not warranted.

Our January 11, 1991 order clearly provided for the reinstatement of the Family Court order by which the Debtor was incarcerated at the ACI, if "all or any of said debts are nondischargeable." *Boudakian v. O'Brien (In re Boudakian)*, A.P. No. 90–1178, slip op. at 4–5 (Bankr.D.R.I. Jan. 11, 1991). As a result of our determination herein that three of the four monetary items in dispute are nondischargeable, and according to the terms of our self-executing and unappealled January 11, 1991 order, the Family Court order directing the incarceration of the Debtor is reinstated.

Enter Judgment consistent with this opinion.