**In re Eugene M. McCAFFREY Debtor.**

**Dorothy HARDY and Bertram Hardy, Plaintiffs,**

v.

**Eugene M. McCAFFREY, Defendant.**

**Bankruptcy No. 92–10549.
Adv. No. 92–1100.**

United States Bankruptcy Court,
D. Rhode Island.

Feb. 3, 1993.

Paul Dinsmore, Rumford, RI, for debtor/defendant.

John D. Deacon, Jr., Providence, RI, for plaintiffs.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Before this Court is a complaint under 11 U.S.C. § 523(a) to determine the discharge-

ability of a debt to Plaintiffs, Dorothy and Bertram Hardy.[1] The matter was heard on December 7, 1992, and the parties were asked to submit post-trial memoranda. At issue is whether Debtor obtained property, money, or services from the Hardys by fraud, and whether Debtor committed a fraud or defalcation while acting as a fiduciary.

## BACKGROUND

Dorothy Hardy, Eugene McCaffrey, and Gene McCaffrey Travel Services, Inc. ("GMTS") entered into a stockholders' agreement on April 16, 1985, by which Hardy received one-third of the shares of GMTS, in exchange for a cash infusion of $40,000 by her and her husband, Plaintiff Bertram Hardy. McCaffrey contributed $20,000 and his expertise to run the business, and received the remaining two-third shares. The purpose of the venture was to operate a travel agency that would make arrangements and issue tickets for domestic and international travel.

The stockholders' agreement gave Hardy a "put option" whereby she could require GMTS to repurchase her shares at any time between May 1, 1990 through April 30, 1992, for $65,000, or the value of the shares on the day she exercised her option, whichever was greater. The agreement named Dorothy Hardy and McCaffrey as directors, with McCaffrey holding the offices of President and Treasurer and Hardy being Vice President and Secretary. Both parties were entitled to compensation as employees of the corporation.

From its inception, the business showed little or no profit. McCaffrey attributes part of the problem to start-up expenses that greatly exceeded budget, including interior design and decorating costs paid to a personal friend of Hardy. He blames the failure mainly, though, on a declining economy and the Persian Gulf War, which took

---

**1.** While the complaint filed by the Hardys does not cite a specific section of the Bankruptcy Code under which they seek to have their claims exempted from discharge, we assume they are attempting to invoke 11 U.S.C. § 523(a) pertaining to the dischargeability of an individual debt, as opposed to § 727 which would deny the Debtor a discharge of all his debts. We base this assumption on the Hardys' request that this Court "determine that the debts *owed by McCaffrey to plaintiffs* are nondischargeable...." (Hardys' Complaint p. 5) (emphasis added).

its toll on the travel business generally. On April 5, 1991, Hardy exercised her option, and requested the corporation redeem her shares. Because of its financial condition, i.e. insolvency, the corporation could not perform, and eventually GMTS filed a Chapter 7 case on February 21, 1992. McCaffrey filed his Chapter 7 petition on the same date, and it is in his personal bankruptcy case that the instant dischargeability complaint was filed.

### DISCUSSION

■■■ 11 U.S.C. § 523(a) is entitled "Exceptions to discharge" and provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]

.    .    .    .    .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....

In general, under § 523(a)(2)(A) the Plaintiff–Creditor must prove that: (1) the money or property was obtained by the Debtor through a knowingly false representation or a reckless disregard for the truth; (2) the Debtor intended to deceive the creditor; (3) the Creditor actually relied on the misrepresentation to its detriment; and (4) the Creditor's reliance was reasonable under the circumstances. *Commerce Bank & Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134, 140 (1st Cir.1992). Defalcation does not require the level of wrongdoing required for fraud or embezzlement, but has been described as the willful neglect of a duty while acting as a fiduciary. *See Boudakian v. Boudakian (In re Boudakian)*, 137 B.R. 89, 94 (Bankr.D.R.I.1992); *Moreno v. Ashworth (In re Moreno)*, 892 F.2d 417, 421 (5th Cir.1990). The standard of proof for dischargeability of debts under 11 U.S.C. § 523(a) is the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Based upon the application of these standards to the facts before us, and for the reasons given below, we find that the Plaintiffs have failed to meet their burden of proof on all issues raised. The Hardys allege that McCaffrey took compensation and benefits from GMTS in excess and in violation of the shareholders agreement, including a leased car, parking, travel, and gifts and credits from providers. They further allege that McCaffrey diverted corporate funds for his personal use and to make repairs and additions to his home, and that he gave corporate money to his live-in companion, Ray Reeves, who often accompanied McCaffrey on trips paid for by the corporation. Additionally, Plaintiffs assert that McCaffrey failed to produce corporate records when Hardy attempted to exercise her repurchase option, and that he deleted financial data from the corporation's computer system. Finally, Plaintiffs charge that immediately prior to the bankruptcy filing, and in order to hinder and delay creditors, McCaffrey transferred all of the assets of GMTS to a new corporation entitled McCaffrey Travel, Inc.

None of the Plaintiffs' allegations have been supported by competent or credible evidence. McCaffrey explains, and we accept, that he transferred the business assets to a new corporate entity to prevent the IRS from continuing to levy and seize client deposits held in GMTS accounts. Plaintiff Dorothy Hardy conceded that she knew McCaffrey was using a car paid for by the corporation, but over a period of six years did not voice any objection. None of Plaintiffs' witnesses were able to state with any certainty when McCaffrey made the repairs and additions to his home, and none were able to testify that the money for the improvements were improperly used business funds. McCaffrey, on the other hand, testified that the Plaintiffs knew and had agreed that the Corporation would pay for his leased car. McCaffrey

also stated that he paid for all the improvements to his home either through personal loans or mortgages on the house, or from funds that he withdrew from an IRA account that he had accumulated with his previous employer. We find that McCaffrey's testimony, largely uncontradicted, is worthy of belief,[2] and that there is absolutely no competent evidence to support the allegation that McCaffrey improved his house with corporate funds.

Additionally, all of the witnesses conceded that Defendant's friend, Ray Reeves, worked for the corporation as a bookkeeper and, as such, did a commendable job. Although it is generally agreed that Reeves did not report for work every day, McCaffrey testified, again without contradiction, that Reeves was paid only for the days he worked. While McCaffrey conceded that he did take trips which were paid for by the corporation, all such trips were business related, and personal travel was either with free or complimentary tickets, or at his own expense. He stated that any friends who accompanied him went at their own expense, and that in no instance was such travel paid for by the corporation. This evidence is uncontradicted, and we see no reason to disregard or reject it.

We also accept McCaffrey's responses to the Plaintiffs' allegations as to business records, and find that he provided Plaintiffs with all the financial information in his possession. It is undisputed that McCaffrey provided Plaintiffs' accountant with GMTS year-end financial statements, and that after the bankruptcy filings he turned over the records to Matthew McGowan, Esq., the Chapter 7 Trustee in both the corporate and individual cases. In addition there were allegations, but no evidence, that McCaffrey deleted corporate records from the GMTS computer. It does not appear that Plaintiffs requested any information or documents of Mr. McGowan in either bankruptcy case.

■ The Plaintiffs argue that the transfer of the assets of GMTS by McCaffrey to a new corporation is, per se, sufficient to deny the dischargeability of their claims. We cannot agree. The liquidation value of the property in question was not substantial, it was encumbered by IRS liens, and the transfer was primarily a means of protecting clients' deposits from IRS's levying power.[3] McCaffrey testified that all of his clients were able to take their trips as a result of this "protective measure", that the new corporation did not continue to operate, and that he did not benefit financially from the transfer, other than to earn commissions on the trips he was able to consummate. Based upon the entire record, we find that McCaffrey did not form the new corporation for improper reasons, but rather to protect his clients.

On September 15, 1989, the Hardys paid $6,595.74 to GMTS as a deposit for a cruise to be taken at Thanksgiving, however, they postponed the trip without re-booking, and never received a refund from GMTS. It is their belief that McCaffrey misappropriated and diverted this money for his personal benefit. McCaffrey testified that Hardy asked him to retain the money, and apply it to the price of a trip to be scheduled at a later date. Again, there is no evidence that McCaffrey intended to use these funds for his personal benefit when he received them. To the contrary, the only evidence is that the money was used for business purposes in an effort to maintain its viability.

■ Finally, Plaintiffs allege that McCaffrey stated falsely in the GMTS bankruptcy petition that Dorothy Hardy voted to place GMTS in bankruptcy (which she did not do), and that for this reason Plaintiffs' claims here should be declared nondischargeable. Based upon the entire record, we conclude that said representation was not made to obtain property, money, services, or credit from the Plaintiffs. Perhaps the Plaintiffs could have sought

---

**2.** While we do not believe Plaintiffs' witnesses lacked credibility, their testimony consisted almost exclusively of personal opinion, unsupported assumption, and innuendo.

**3.** The IRS had previously levied on a GMTS bank account, seizing money belonging to GMTS clients, and McCaffrey (justifiably) feared similar, repeated action on the part of the IRS.

denial of McCaffrey's discharge under 11 U.S.C. § 727,[4] but no such claim was alleged or proven by the Plaintiffs. We accept McCaffrey's explanation that he had attempted to obtain Hardy's signature, but that the emergency nature of the situation (IRS levies) did not permit the observance of that formality, especially in view of Mrs. Hardy's historical lack of interest in corporate paperwork. Again, we accept McCaffrey's testimony that this act was not willful or fraudulent. Notwithstanding the multitude and wide range of allegations by the Plaintiffs against Mr. McCaffrey, the proof (even under the *Grogan v. Garner* standard) is lacking, and on the facts this is not a close case.

For all of the foregoing reasons, it is ORDERED that the debts owed by Eugene M. McCaffrey to the Plaintiffs are determined to be dischargeable.

Enter Judgment consistent with this opinion.

---

**4.** Under § 727 the Debtor is denied a discharge of all of his debts if he "knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." 11 U.S.C. § 727(a)(4)(A). On the facts before us, in the absence of the requisite fraudulent intent, such a claim would have resulted in a finding that the Debtor is entitled to discharge.