In re Robert James MOFFITT, Debtor.

Stanley W. WRIGHT, Liquidating
Trustee, Plaintiff,

v.

Robert James MOFFITT, Defendant.

Bankruptcy No. 91–01222–H2.
Adv. No. 91–0185.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

April 22, 1992.

Jeffrey V. Tzetzo, Houston, Tex., for debtor.

Robert James Moffitt, pro se.

Adrian M. Overstreet, Overstreet, Winn, & Edwards, P.C., Austin, Tex., for plaintiff.

### OPINION OF THE COURT

RANDOLPH F. WHELESS, Jr., Chief Judge.

This matter is before the Court on the plaintiff's motion for summary judgment seeking a judgment of non-dischargeability of certain debts. The primary issue in the case is whether an unauthorized payment by a Chapter 11 Trustee to himself for fees, who alleges he was acting in good faith, constitutes a non-dischargeable debt (a defalcation) within the meaning of 11 U.S.C. § 523(a)(4). There is also an issue of whether a sanction imposed on the debtor after he filed this Chapter 7 case is or is not affected by the debtor's discharge on the ground that it is a post petition debt. Therefore, the issue now facing the Court is whether there are material fact issues precluding summary judgment or whether summary judgment should now be granted as to the above described obligations.

## I. *Facts and Procedural Background*

The essential facts on the defalcation issue appear to be in the record without dispute. On March 7, 1988, Debtor, Robert James Moffitt ("Moffitt"), was appointed as a Chapter 11 Trustee in a case involving *North American Oil & Gas, Inc.,* Case No. 88–10358, filed in the United States Bankruptcy Court for the Western District of Texas. As a Chapter 11 Trustee, Moffitt operated the business affairs for *North American Oil & Gas, Inc.* for a period of time. Shortly thereafter, the Court appointed plaintiff, Stanley Wright ("Wright") as the Liquidating Trustee under the Chapter 11 plan.

Moffitt submitted an application for fees and expenses for $134,385.88 and for reimbursement of expenses for $20,596.27. None of these fees and expenses had been applied for, not even on an interim basis, nor had they been considered or authorized by the Court. Moffitt stated in his application that he had received (paid himself) as a Chapter 11 Trustee $118,580.00 in fees and $16,917.36 in reimbursement of expenses.

On October 16, 1990, Judge Leif Clark entered an Opinion and Order denying the compensation sought by Moffitt and ordering him to return to the estate all sums of money which he had paid himself for acting as a Trustee for the reasons stated therein. On October 31, 1990, the Court entered a separate Order denying Moffitt's compensation and requiring disgorgement of the $118,580.00 and the $16,917.36.

On February 14, 1991, Moffitt filed for bankruptcy under Chapter 7 with this Court. On March 27, 1991, the Bankruptcy Court for the Western District of Texas entered an Order requiring Moffitt to appear at a hearing on Wright's motion for sanctions. Moffitt failed to appear at the sanction hearing. On April 16, 1991, the Court signed an Order assessing sanctions in the amount of $25,000.00 against Moffitt for "violation of Bankruptcy Rule 9011."

Moffitt has not paid any of the amounts as ordered by the Court.

On March 25, 1991, Wright filed a complaint to determine the dischargeability of Moffitt's debt, and subsequently filed a

motion for summary judgment with this Court on September 20, 1991 on the basis of the record, including Judge Clark's Opinion and Order denying Moffitt's compensation and requiring disgorgement and the order assessing sanctions against Moffitt.

In his motion for summary judgment, Wright argues that Moffitt's payment to himself without authority (coupled with the Court's denial of his application and Order for disgorgement) results in a defalcation while acting in a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4) and is non-dischargeable. Wright argues further that the obligation to repay the $25,000.00 is also non-dischargeable because Judge Clark's Order of April 16, 1991 was entered subsequent to the filing of Moffitt's Chapter 7 petition.

It is not the function of this Court to review Judge Clark's determinations or rulings. That would be a matter for direct appeal of Judge Clark's (respective) orders. Rather, it is the sole function of this Court to determine whether the order assessing sanctions against Moffitt post petition and the unauthorized payments to himself are or are not dischargeable debts and/or are discharged.

## II. *Discussion*

The debtor Moffitt has responded to the plaintiff's motion for summary judgment and, among other things, has indicated that he thought it was proper for him to pay himself interim fees and to reimburse himself for out of pocket expenses paid by him on behalf of the estate and that therefore the payments of fees and reimbursement of expenses were innocently paid and received under a mistake of fact or law and did not constitute an intentional wrongdoing.

A. Non-dischargeability Under § 523(a)(4)

■ In pertinent part, 11 U.S.C. § 523(a)(4) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

### (1) *Fraud While Acting In A Fiduciary Capacity*

Thus, where a fraud occurs in the context of a fiduciary relationship, a debt resulting therefrom is not dischargeable in bankruptcy. For proof of fraud to sustain non-dischargeability under § 523(a)(4): "The plaintiff must prove the type of fraud contemplated by the Bankruptcy Code, which involves moral turpitude or intentional wrong to render the debt non-dischargeable." *In re McCurdy*, 45 B.R. 728, 731 (Bankr.M.D.Penn.1985); *In re Carothers*, 22 B.R. 114, 120 (Bankr.Minn.1982). *See also 3 Collier on Bankruptcy* § 523.08[4] (15th ed. 1982). It thus appears that if Wright were relying solely on the "fraud" provisions of § 523(a)(4), a material fact issue would have been created, because Moffitt's payment of fees and expenses to himself may have been merely an unauthorized, but innocent, payment made under a mistake of fact or law.

### (2) *Defalcation While Acting in a Fiduciary Capacity*

However, Wright principally argues that Moffitt's unauthorized payments to himself constitutes a defalcation while acting in a fiduciary capacity within the meaning of other terms of § 523(a)(4). In this Court's consideration of Wright's motion for summary judgment, this Court must determine three issues: 1) whether Moffitt's debts were incurred while acting in a fiduciary capacity, 2) whether the debts in question were created by defalcation, and 3) whether any material fact issues exists as to either of the above.

### *Fiduciary*

■ The first of these two inquiries is relatively easy. The duties of a Chapter 11 Trustee are stated in 11 U.S.C. § 1106. They include the obligation to "investigate ... the financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business." It is well settled that a Trustee in bankruptcy is a fiduciary. *Wolf v. Weinstein*, 372 U.S. 633, 650, 83 S.Ct. 969,

979–80, 10 L.Ed.2d 33 (1963); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355–56, 105 S.Ct. 1986, 1994–95, 85 L.Ed.2d 372 (1985); *In re Lowry Graphics, Inc.*, 86 B.R. 74, 76 (Bankr. S.D.Tex.1988). "All of a Trustee's obligations are fiduciary obligations." *In re Grodel Mfg., Inc.*, 33 B.R. 693, 694 (Bankr. Conn.1983).

No fact issue exists here. In this Court's opinion there is no question that Moffitt was acting in a fiduciary capacity. The funds of the estate came into his possession, which funds constitute a res over which a Chapter 11 Trustee has care, custody, control and responsibility.

## Defalcation

■ The more difficult question, in light of Moffitt's assertion that he was acting under a mistaken belief and/or in good faith is whether a defalcation exists when a fiduciary makes a payment without authority but believes that such payment is authorized. The Sixth Circuit in *In re Interstate Agency, Inc.*, 760 F.2d 121 (6th Cir.1985), articulated the following definition of "defalcation": "Defalcation is defined as encompassing embezzlement, the misappropriation of trust funds held in any fiduciary capacity and the failure to properly account for such funds." *Interstate Agency*, 760 F.2d at 125 (quoting Black's Law dictionary at 375 (5th ed. 1979)). The term "misappropriate" is defined as "improper, illegal, wrongful, or corrupt use of application of funds, or property." Black's Law Dictionary at 901 (5th ed. 1979).

However, some courts have held that no element of intent or bad faith is necessary for a breach of fiduciary duties to constitute a misappropriation or defalcation within the meaning of 11 U.S.C. § 523(a)(4). *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511–12 (2d Cir.1937); *In re Johnson*, 691 F.2d 249, 257 (6th Cir. 1982).

In *Herbst*, a foreclosure receiver had been granted an allowance of fees. He had received and spent the allowance before the order awarding it was reversed on appeal. When the receiver was later adjudicated a voluntary bankrupt, the obligation to reimburse the fee in question was held to be non-dischargeable under section 523(a)(4); even though there was no indication of deliberate wrongdoing. In *In re Johnson*, the Sixth Circuit applied an objective standard in determining whether a contractor's failure to make payment of funds entrusted to him in accordance with the Michigan Building Contract Fund Act constituted defalcation. The court reasoned that "[h]ad Congress intended to reach only intentional or bad faith defalcation, it could have easily narrowed the sweep of the definition by requiring a special mental element." *In re Johnson*, 691 F.2d at 254.

The Fifth Circuit somewhat addressed the involved issue in *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980) opinion by then U.S. District Judge Patrick Higginbotham which was adopted by the Court. The issue in that case involved a dischargeability action under § 17(a)(4) of the Bankruptcy Act, the predecessor statute to 11 U.S.C. § 523(a)(4). Judgment had been entered in an Oklahoma Court holding that Bell had received construction funds in his capacity as managing officer of Tom Bell Homes, Inc., that Bell held these funds as trust funds, that Bell had "misapplied" these funds and was personally liable to Carey Lumber Company, a creditor of Tom Bell Homes, Inc.

An Oklahoma statute had created the trust and the trust res (i.e. the construction funds) and charged the trustee with affirmative duties in applying these trust funds.

However, among other things, Bell argued that a finding of non-dischargeability under § 17(a)(4) under these facts required a finding that the bankrupt intentionally diverted, stole or misappropriated funds for his own use. Judge Higginbotham and the Fifth Circuit rejected that contention and cited *Central Hanover Bank & Trust Co. v. Herbst, supra,* and *In re Hammond*, 98 F.2d 703 (2d Cir.1937), *cert denied*, 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1939). The Fifth Circuit noted that the Second Circuit had rejected the contention that a holding of non-dischargeability under

§ 17(a)(4) must be predicated on a finding of intentional wrongdoing by the bankrupt.

Bell had relied upon *In re Bernard,* 87 F.2d 705 (2d Cir.1937) to the effect that misappropriation of § 17(a)(4) "must be due to a known breach of the duty, and not to mere negligence or mistake." *Bernard,* 87 F.2d at 707. However, the Court in *Carey Lumber Company* cast doubt as to the continued validity of the "dicta" in *In re Bernard* to the effect that misappropriations under section 17(a)(4) may not be found on the basis of "mere negligence or mistake." The Fifth Circuit noted that more recently in the *Matter of Kawczynski,* 442 F.Supp. 413 (W.D.N.Y.1977) the district court of New York had written that "defalcation has been interpreted by the Second Circuit to include innocent defaults." *Kawczynski,* 442 F.Supp. at 418.

Indeed, in the later case of *In re Hammond, supra,* the Second Circuit had discussed *In re Bernard,* and stated that the mistake of fact referred to in *In re Bernard* must be one as to fact, not as to a rule of law with knowledge of which the bankrupt is chargeable.

Thus the Fifth Circuit concluded that there is no requirement that a misappropriation must have been shown to have been intentional in order to be covered by § 17(a)(4). On the other hand, however, the Fifth Circuit had noted that issues of mistake of fact had no application in *Carey Lumber Co. v. Bell.* This was because (1) Bell was charged with knowledge of his legal duties under the lien trust laws and (2) he had suggested no possible mistake of fact that might have excused him from that duty.

Here, it is possible that Moffitt could legitimately have anticipated that he would have been entitled to the authorization of *some* compensation for working as Chapter 11 trustee in the North American Oil & Gas case and for reimbursement of reasonable and necessary expenses, even though he knew he had not been authorized by an order of the Court to receive such payment at the time he received the involved funds.

It is clear that Moffitt intentionally paid himself these amounts. What is not in the record at this time (for summary judgment purposes) is whether or not he paid himself under the mistaken belief that he was entitled to make such payments and in these amounts. While it appears to be dicta in *Carey Lumber Co.* (in light of the fact that on the facts before them Bell had suggested no possible mistake of fact that might have excused him), it nevertheless appears that the Fifth Circuit approved the holding of *Central Hanover Bank & Trust Co. v. Herbst.*

This Court adopts the language from *Matter of Murphy,* 9 B.R. 167, 175 (Bankr. E.D.Va.1981).

> "Defalcation has been given the broadest meaning and interpretation involving the least amount of misconduct. *Consumers Life Insurance Co. v. Staller, supra,* 4 B.C.D. [328] at 331. Thus, "[w]hen a fiduciary takes money upon a conditional authority which may be revoked ... he is guilty of a 'defalcation' in failing to restore it upon revocation of the authority, although it may not be 'fraud' or an 'embezzlement' or perhaps not even a 'misappropriation'." 9 Am. Jur.2d, *Bankruptcy,* § 801 (1963). *See Fidelity and Deposit Company of Maryland, Inc. v. Lilly, supra,* 1 B.R. [773] at 774."

*Murphy,* 9 B.R. at 175.

Therefore, since Moffitt is "charged with knowledge of his legal duties" as Chapter 11 trustee, the unauthorized payments by Moffitt as trustee to himself are hereby determined to be a defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4). This is so notwithstanding that he may have had the mistaken belief that he was entitled to the same or at least a portion thereof. Thus this Court will enter summary judgment that such obligation is non-dischargeable. Plaintiff is to submit such a judgment.

### The 9011 Sanction

By order of April 16, 1991, Judge Leif Clark "sanctioned" debtor Robert J. Moffitt $25,000.00 "for his violation of Bankruptcy Rule 9011." This Order states, in part, as follows:

"The Court had previously Ordered Robert J. Moffitt to appear at this hearing. Robert J. Moffitt refused to appear."

"The Court after considering the pleadings on file and listening to the arguments of counsel is of the opinion that a violation of Bankruptcy Rule 9011 has been shown. The Court made its findings of fact and conclusions of law on the record which are incorporated herein."

The referred to findings of fact and conclusions of law have not been submitted to this Court neither has a transcript of the hearing. As a result it is unclear in this record whether Judge Clark "sanctioned" Robert J. Moffitt for his failing to appear (i.e. violation of his Order) or for certain pleadings which Moffitt may have filed in the North American Oil & Gas Company case. However, this Court would note that Bankruptcy Rule 9011, the stated authority for the sanction, does not pertain to appearances in the Court nor of violations of orders of the Court. Rather, it pertains to the signing of pleadings and/or other papers in the case.

Judge Clark's Order of April 16, 1991 does not appear to involve civil contempt as it doesn't appear to be compensatory or designed to effect compliance with a lawful court order. Further, although the "contempt" here, if this was a contempt (and not a sanction under Bankruptcy Rule 9011), was committed in the presence of the Court (i.e. Moffitt failed to appear before the Court); nevertheless, there is a serious question whether there is either constitutional or statutory authority for a Bankruptcy Court to exercise criminal contempt powers. See *Matter of Hipp, Inc.,* 895 F.2d 1503 (5th Cir.1990) at pages 1509 thru 1521. This holding also casts significant doubt on the viability of Bankruptcy Rule 9020 where violation of the Court's order is the basis for the contempt. On page 1520, the Fifth Circuit stated: "Accordingly, we construe Rule 9020 as prescribing the procedures by which such contempts as the bankruptcy court may otherwise have jurisdiction over are to be handled in and by that court and reviewed by the district court. But where the bankruptcy court does not otherwise have jurisdiction over the contempt proceeding—as we have held it does not in a section 401(3) criminal contempt prosecution for violation of a bankruptcy court order—Rule 9020 does not apply. Therefore, in such a case there is no authority for the bankruptcy court to conduct the trial. Rather, the proceedings should be governed by Fed.R.Crim.P. 42(b), and heard by the district court (or by that court and a jury)." See also *In re Bratton,* 117 B.R. 430, 435 et seq. (W.D.Ark.1990).

■ If the sanction were imposed for failing to obey an Order of the court, such sanction would not arise from Bankruptcy Rule 9011. Rather it would constitute a criminal contempt under 18 U.S.C. § 401. If criminal contempt is the basis for the April 16, 1991 order, it is probably without constitutional support and would therefore be void.

■ If the sanction were truly for violations of Bankruptcy Rule 9011 (i.e. for pleadings filed in the bankruptcy case in violation of that rule), in this Court's opinion such violations would be dischargeable if they occurred prior to the filing of Moffitt's bankruptcy case, unless they are shown to be in violation of § 523 of Title 11 in some way.

In the case of *In re McIntyre,* 96 B.R. 70, 71 (Bankr.S.D.Miss.1989), Bankruptcy Judge Edward Gaines held that the sanctions imposed in that case were non-dischargeable. Judge Gaines reasoned: "To allow the offending party to discharge a rule 9011 sanction would totally defeat, destroy, and emasculate its purpose." While Judge Gaines may be correct insofar as the effect of the discharge nevertheless this Court is of the opinion that Bankruptcy Rule 9011 is not an additional exception to the discharge provided by 11 U.S.C. § 727. In this Court's opinion only § 523 of Title 11 provides for the non-dischargeability of debts and unless the sanction can fall within one of the provisions of that section it is dischargeable. *See Matter of Case,* 937 F.2d 1014, 1024 (5th Cir.1991).

In *Case* the Fifth Circuit specifically stated that an objection to the dischargeability of a particular debt must be based on one

or more specific provisions of the code. The Court was discussing the dischargeability of Bankruptcy Court sanctions in observing this rule of law. In *Case*, the Fifth Circuit reversed the Bankruptcy Court's determination that the sanctions were non-dischargeable.

█ Of course if the transaction that created the debt occurred post-petition the obligation would not be discharged by a later discharge in a Chapter 7 case. 11 U.S.C. § 727(b).[1] The discharge relates to obligations in existence at the date of the filing of the case, in a Chapter 7 case. Thus, if the activity creating the sanction occurred post-filing, the obligation arising therefrom would simply be not discharged. This is different from being non-dischargeable.

█ Since the transcript of the hearing and none of the pleadings or other papers which might have formed the basis for a violation of Bankruptcy Rule 9011 are in this record (including the Findings of Fact and Conclusions of Law, it is not possible to tell whether any such documents were signed prior to the filing of Moffitt by his bankruptcy case; although it does seem implicit that any such documents would have been executed prior to the filing of this Chapter 7 case.

After consideration of the various issues relating to the sanction, the Plaintiff's motion for summary judgment on this debt (the sanction) will be denied.

---

**1.** A different result might pertain in a Chapter 11 case if the sanctionable activity occurred between the date of filing and the date of confirmation. *See* 11 U.S.C. § 1141(d)(1)(A).