**In re David and Penny SHANE, Debtors.**

**Paul KUCK, Plaintiff,**

**v.**

**David and Penny SHANE, Defendants.**

**Bankruptcy No. 90–0051.**
**Related Case: 89–03246.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Sept. 4, 1991.

As Amended July 29, 1992.

Kenneth Baker, Toledo, Ohio, for plaintiff.

John J. Hunter, Jr., Toledo, Ohio, for defendants/debtors.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on Complaint to Determine Dischargeability of Debt and for a Monetary Judgment. A Trial was held at which time the parties were afforded the opportunity to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the evidence and arguments presented, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that a total of Twenty-three Thousand Two Hundred Twenty-five Dollars ($23,225.00) should be nondischargeable.

### FACTS

The following facts were derived from stipulation and testimony at Trial. In October, 1987, Paul Kuck [hereinafter "Kuck"], Plaintiff, and David Shane [hereinafter "Shane"], Defendant/Debtor, orally contracted to enter into a business venture known as K & S Cattle. The terms of the agreement were such that the Kuck would provide the equipment, the real estate, and the funds necessary to operate the business. The expenses compensable by the Plaintiff included cattle purchases, and general operation costs of the farm. The Plaintiff was also to furnish Shane with a place to live, and pay Shane's salary of Five Hundred Dollars ($500.00) per week. Under the terms of the agreement, Kuck was to remain sole owner of all of the assets purchased, including the cattle. The Defendant was to provide his expertise in selecting, breeding, raising, and marketing the cattle. Two accounts were opened in the name of K & S Cattle, to which both parties had access. One was a general operating account and the other was an expense account for use by Shane. The Plaintiff and Defendant were to split the net profits equally at the end of each year.

On December 12, 1988, Kuck wrote to Shane that the verbal contract was terminated and requested an accounting for outstanding profits and reminded Shane that all tools, equipment, and livestock were to remain on the farm. Kuck recommended that Shane vacate the premises or be charged rent. K & S Cattle existed only fourteen (14) months. There were no profits for the life of the partnership and losses for the year of 1988 were estimated at One Hundred Thousand Dollars ($100,000.00).

When the Plaintiff returned to the farm after the dissolution of the partnership, he found some equipment missing, to wit, some blowers and fans. He had estimated the missing equipment's value at One Thousand One Hundred Dollars ($1,100.00) based upon receipts presented to the Court. Although the Plaintiff alleges that the Defendant did remove the equipment, he did not actually observe the Defendant take it. His allegation is based primarily upon the fact that the Defendant was in custody and control of the assets and has failed to provide any explanation as to their whereabouts.

The Plaintiff is now before the Court requesting a nondischargeable monetary judgment for the failure to the Defendant to abide by the terms of the contract. All of the allegations by the Plaintiff involve failures of the Defendant to properly account for either the proceeds of cattle sales or the location of the cattle and equipment. The Plaintiff withdrew its claim as to the conversion of the breeding papers during Trial.

The Plaintiff contended that the Defendant failed to account for a Sugar Ray Calf worth Three Thousand Three Hundred Dol-

lars ($3,300.00) bought with K & S Cattle funds. The Plaintiff also contends that the Defendant failed to account for the proceeds of a Sugar Ray Straight Legged Calf worth Two Thousand Seven Hundred Fifty Dollars ($2,750.00) purchased with K & S Cattle funds which was allegedly sold "out west."

The Plaintiff contended that a steer was purchased from Bill Haskins for Ten Thousand Dollars ($10,000.00) in 1987 for the purpose of showing it at the Ohio State Fair in 1988. The Plaintiff presented two checks, each for Five Thousand Dollars ($5,000.00), payable to Bill Haskins on the K & S Cattle account. According the Plaintiff, the Defendant and Bill Haskins agreed that should the steer not win a prize, it would be resold to Haskins. The steer did not win any prizes in the Ohio State Fair and was returned to Haskins. Only Seven Hundred Ten Dollars and Eighty-one Cents ($710.81) were deposited into the K & S Cattle account as a result of that transaction. At Trial, the parties agreed that the value of the steer was Seven Hundred Dollars ($700.00)

In addition to his agreement to pay the costs involved with the farm, the Plaintiff agreed to purchase a "show steer" for use by the Defendant's son, Tavis. Tavis was to raise the steer for his 4–H project on the Plaintiff's farm at the expense of the Plaintiff. Any proceeds from competitions, less One Thousand Dollars ($1,000.00) which was to go to Tavis for his efforts, were to be deposited in the K & S Cattle account. In August 1988, the steer won the grand champion prize at the Ohio state fair. The steer was then sold for Thirty-eight Thousand Five Hundred Dollars ($38,500.00). Contrary to the agreement, no money was deposited into the K & S account as a result of that sale, rather all the proceeds were deposited into Tavis Shane's bank account.

The Plaintiff maintains that the Defendant misappropriated a total of Fifty-four Thousand Six Hundred Fifty Dollars ($54,-650.00) from the K & S Cattle account and assets. The Plaintiff seeks to have a judgment in the amount of the missing property and have that judgment declared nondischargeable pursuant to Sections 523(a)(2)(A) and (4) of the Bankruptcy Code.

### LAW

The issue presented before the Court is whether Shane's actions constitute conduct which would cause the debt owed to Kuck to be nondischargeable. The Bankruptcy Code [hereinafter "Code"] has provisions dealing with Debtors who incur a debt on the basis of fraud. The Code excepts those debts from discharge. *See* 11 U.S.C. § 523(a)(2) and (4). The Code recognizes two types of fraud: passive and actual.

■ Actual fraud is nondischargeable pursuant to Section 523(a)(2)(A) of the Code:

Exceptions to Discharge

a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Implicit in this section is the duty to disclose. Under Section 523(a)(2)(A), a debtor who is under a duty to disclose and fails to do so, suffers from the consequence of having the debt declared nondischargeable. This Court is of the opinion that Section 523(a)(2)(A) does not apply to the facts at hand. Rather, this Court believes that the Debtor's conduct falls within the realm of Section 523(a)(4).

Section 523(a)(4) of the Bankruptcy Code provides that:

a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4).

By a plain reading of the statute, it is clear that "fiduciary capacity" relates only

to "fraud or defalcation," but it need not be present in situations of embezzlement or larceny. *See also Matter of Michel,* 74 B.R. 80 (N.D.Ohio 1985). Therefore, for a debt to be declared nondischargeable due to fraud under Section 523(a)(4), the creditor must prove that in relation to the creditor, the debtor was acting in a fiduciary capacity. Based upon the evidence presented, the Court finds that Shane was acting in a fiduciary capacity with respect to Kuck.

Shane and Kuck entered into a joint venture; Shane voluntarily contributed his knowledge and skill in cattle raising and Kuck voluntarily contributed the capital for the common goal of making a profit, with each having a share of the profits. The sale proceeds were to be deposited into a checking account to which each had access. Persons involved in a joint business venture owe a fiduciary responsibility to each other. 46 Am.Jur.2d JOINT VENTURES § 50 (1969). Accordingly, Kuck and Shane owe a fiduciary responsibility to each other. Finding that the fiduciary relationship existed, the Court has overcome the threshold question and now directs its attention to whether Shane committed fraud or defalcation for the purposes of Section 523(a)(4).

■ As to the fraud or defalcation exceptions to discharge found in Section 523(a)(4), proof must be presented that the fiduciary relationship be based upon the creation of an express trust. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Interstate Agency, Inc.,* 760 F.2d 121 (6th Cir.1985). The trust must have existed before, and be separate from, the incident creating the contested debt. In the case at bar, the parties owed to each other a fiduciary obligation prior to Shane's failure to properly account for the funds. Shane and Kuck entered into an agreement requiring segregation of the funds from any and all cattle sales. The Court finds that Shane, while acting in a fiduciary capacity, committed defalcation due to his failure to account for the missing proceeds, cattle, and equipment that was entrusted to him. There existed a deficit in the K & S Cattle account resulting from Shane's ignorance, negligence, and/or misconduct; any of which consti-tute defalcation. "[W]hen a fiduciary takes money on a conditional authority which may be revoked and knows at the time it may be, he is guilty of a 'defalcation' though it may not be a 'fraud,' or even an 'embezzlement' or perhaps not even a 'misappropriation.'" *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (CCA2 1937). The testimony at Trial, and the stipulations submitted, established that the Defendant disposed of various cattle without depositing the proceeds from the dispositions into the K & S Cattle account as agreed at the commencement of the joint venture. The testimony and evidence presented also established that some of the farming equipment was missing after Shane vacated the premises. The Defendant was unable to explain the absence of this property while in his control. As a result, the Court finds the Defendant liable and that the liability is nondischargeable.

■ Supposing, for a moment, that Shane had argued that the agreement surrounding Tavis' show steer was outside the joint venture agreement, and as such, should be a dischargeable debt. This Court would be inclined to disagree, and would find the debt nondischargeable under the embezzlement exception.

■ Embezzlement is the "fraudulent appropriation of property by a person to whom such property had been lawfully entrusted or into whose hands it has lawfully come." *Moore v. United States,* 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1985). Kuck must prove, by a preponderance of the evidence, that (1) Shane lawfully acquired the property with the consent of Kuck; (2) Shane appropriated the property for his own use; and (3) some form of fraud or deceit was used. *Grogan v. Gardner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Skemp v. Michel,* 74 B.R. 88 (N.D.Ohio 1986); *In re James,* 42 B.R. 265 (W.D.Ky.1984). The Court finds that Kuck met his burden of proof. Shane had authority to sell the steer and collect the proceeds. Shane was clearly under the obligation to deposit the proceeds from the steer, less One Thousand Dollars ($1,000.00), into the K & S Cattle account.

Shane stipulated to the fact that he deposited the proceeds into Tavis' bank account. Thus, he fraudulently appropriated the money for his own use. Tavis' steer won the prize money at the fair and yet the K & S Cattle account did not reflect a deposit for that win. Rather, Shane made the deposit into his son's account in violation of the K & S Cattle agreement and without the knowledge or consent of Kuck. After the joint venture was terminated, the existence of the proceeds were discovered and a demand for a turn-over was made. To date, Shane has failed to turn-over any portion of these funds to Kuck, despite his statements to Kuck to the contrary.

■ The Defendant asserted that the Plaintiff lacked standing to bring this action, claiming that only K & S Cattle had standing to bring suit. This Court disagrees with the Defendant' contention. Defendant was under a duty to deposit proceeds into a segregated account. Thus, a fiduciary obligation existed between the Plaintiff and the Defendant giving rise to Plaintiff's cause of action. If no pre-existing duty had been owed to Plaintiff, then Plaintiff would have been merely a creditor of K & S Cattle and would have been unable to assert a corporate debt as nondischargeable in the Defendant's individual bankruptcy. *See McLaughlin v. Jones,* 114 B.R. 917 (N.D.Ohio 1990); *Kosic v. Hays,* 31 B.R. 285 (E.D.Tenn.1983); *Greyhound Lines, Inc. v. Thurston,* 18 B.R. 545 (M.D.Georgia 1982).

The Plaintiff has met its burden by a preponderance of the evidence. The Defendant did not appear at Trial and did not, therefore, provide any substantial evidence contrary to the Plaintiff's. The Defendant's wife testified that she was not a party to the venture, did not live on the farm, and had no knowledge of the missing funds and property. The Defendant's son testified that he was not a party to the agreement, that he won the Ohio State fair, and that he received One Thousand Dollars ($1,000.00) from the winning proceeds. He testified that he did not know what happened to the rest of the money from the sale of his show steer.

The Court finds that the following reflects amounts unaccounted for by the Defendant:

1) Proceeds from Prize Steer $37,500.00
2) Trimmer Steer $ 700.00
3) Straight Legged Calf $ 2,750.00
4) Sugar Ray Calf $ 3,300.00
Total $44,250.00

However, the Court finds that only one-half of this debt is nondischargeable as the terms of the business agreement were that all the profits would be split equally. Because the Defendant's wife was not party to the joint venture, she cannot be held liable on the debt, and therefore, the claim against her must be dismissed. The Court finds that the total value of the missing equipment, One Thousand One Hundred Dollars ($1,100.00), is nondischargeable as Kuck was to retain complete ownership of all the equipment of K & S Cattle.

In judging the credibility of the witnesses, the Court has taken into consideration the witnesses intelligence, age, memory, demeanor while testifying, the reasonableness of the testimony in light of all the evidence in the case, and any interest, bias, or prejudice the witnesses may have. In reaching the conclusions found herein, the Court has considered all the evidence and arguments of counsel, regardless of whether they are specifically mentioned in this opinion.

Accordingly, it is

ORDERED that the amount of Twenty-two Thousand One Hundred Twenty-five Dollars ($22,125.00), which is equal to one-half of the debt owed to the Plaintiff with respect to the missing proceeds, be, and is hereby, declared Nondischargeable.

It is FURTHER ORDERED that the amount of One Thousand One Hundred Dollars ($1,100.00), which is equal to the value of the missing equipment, be, and is hereby, declared Nondischargeable.

It is FURTHER ORDERED that the Complaint as to Penny Shane be, and is hereby, Dismissed.