Argued and submitted September 26, 1980, affirmed as modified and remanded with instructions March 30, 1981

KLICKMAN,
*Respondent,*

*v.*

KLICKMAN et al,
*Appellants,*

(No. A7706-07883, CA 16336)

625 P2d 1377

Allan F. Knappenberger, Portland, argued the cause for appellants. With him on the brief was Knappenberger, Tish & Shartel, Portland.

No appearance for respondent Herman R. Klickman.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Plaintiff brought this suit in equity against eight defendants, seeking the imposition of a constructive trust for plaintiff's benefit on one-third of the net proceeds from the sale of farm property allegedly purchased in a joint venture involving plaintiff and his brother, George. Only two of the eight defendants were duly served. The trial court held in favor of plaintiff and those two defendants appeal.[1]

Plaintiff and George Klickman were brothers; Verna Klickman was married to George. George and Verna had five children: Kenneth, Robert, Melvin, Patricia and Ronald. Plaintiff brought suit against all five of the children.[2] Service, however, was effected against only defendants Kenneth Klickman and his wife, Merle Jo Klickman.

On August 1, 1957, approximately 20 acres of farm property were conveyed by William and Myrtle Wichert to plaintiff and George and Verna Klickman. Of the $8500 purchase price, plaintiff contributed $6000. For approximately a year, plaintiff, George and Verna lived together on the farm. In anticipation of his imminent marriage, plaintiff conveyed the farm to George and Verna on May 26, 1958, for "love & affection." Then on May 31, 1958, plaintiff, George and Verna signed the following agreement.

### *A G R E E M E N T*

"THIS AGREEMENT made and entered into this 31 day of May, 1958, by and between HERMAN ROBERT KLICKMAN, hereinafter called the 'First Party', and GEORGE KLICKMAN and VERNA KLICKMAN, husband and wife, hereinafter called the 'Second Party'.

"WHEREAS, the First Party has transferred to the Second Party the properties in which they had a joint venture; and

"WHEREAS, the Second Party is desirous of providing for the First Party for his share, if the property is sold or otherwise disposed of during his lifetime.

---

[1] Plaintiff - Respondent failed to file a brief before this court. Therefore, the case was submitted on its merits pursuant to Rule 7.32 of the Rules of Appellate Procedure.

[2] Also joined as defendants were Ray and Doris J. Haskin, the purchasers of the farm property from defendants, and Ronald and Melvin Klickman.

"THEREFORE IT IS MUTUALLY AGREED as follows: The Second Party agrees that, in the event of sale, condemnation or if the property is otherwise disposed of during the lifetime of the First Party, the First Party shall receive one-third of the net proceeds from such sale or disposition."

Prior to signing, George handed plaintiff this agreement and told him that it would protect plaintiff if he lived that long and that it would protect plaintiff's interest in the farm. Both the conveyance and this agreement were prepared and recorded by George. Thereafter, plaintiff made no further contributions to the farm.

Verna lived on the farm until her death in 1965, whereupon her interest in the property passed to George. Upon George's death in 1970, his interest passed by will to his five children, giving them each a one-fifth share in the property. During the probate of George's estate, the probate court allowed Robert and Patricia to sell their interests in the farm to Melvin, Ronald and defendants.

Plaintiff testified that he did not file a claim against the estates of either Verna or George because it would have been inappropriate to do so in view of the fact that the agreement conditioned his right to receive proceeds upon the sale or disposition of the property. He testified "[i]f it didn't get sold, why, I was out and that was it." He related that approximately one year after George's death, George's children came over to his house, at which time defendant Kenneth Klickman asked him to "sign over" his interest in the farm. Plaintiff refused and informed Kenneth of the agreement which gave plaintiff a one-third share in any sale proceeds. Kenneth denied any knowledge of the agreement. Plaintiff testified that on the following day he photocopied the agreement and mailed it to Kenneth.

Kenneth, on the other hand, testified that he first heard about the agreement between plaintiff and his parents in 1975, after closure of probate in his father's estate. He stated that he received in the mail a copy of the agreement which was sent by plaintiff; however, he did not realize what property was involved and thought that it was possibly a piece of property located by a railroad camp he believed to have been purchased by plaintiff and his father.

On March 16, 1976, Ronald, Melvin and defendants sold the farm to Ray and Doris Haskin for $47,000. During their possession of the farm, defendants, together with Ronald and Melvin, made numerous improvements to the property.

Plaintiff filed this suit in equity on June 3, 1977, seeking imposition of a constructive trust on one-third of the net proceeds from the sale of the farm to the Haskins.

Defendants in their answer raised the following affirmative defenses: (1) laches due to plaintiff's knowledge of certain facts, his delay in commencing his suit, and the resulting injury and prejudice to defendants; (2) estoppel based upon plaintiff's knowledge of certain facts, his failure to act and assert his rights, and defendants' consequent detrimental reliance; (3) set-off against any monies awarded to plaintiff for expenses incurred by defendants for the property; and (4) calculation of any award to plaintiff on the basis of the value of the farm at the time of one of the three dispositions of the property prior to the March 16, 1976, sale to the Haskins.

The trial court awarded judgment to plaintiff for $6000, based on the conclusion that a constructive trust arose upon execution of the deed from plaintiff to George and Verna and that a constructive trust continued after the death of George and was binding on his heirs. It concluded that due to laches plaintiff's recovery was limited to the amount of his initial investment.

Defendants' principal contentions on appeal are that: (1) plaintiff cannot recover on a constructive trust theory because there was no evidence of an oral agreement or breach thereof; and (2) plaintiff had an adequate remedy at law.

■ In analyzing the circumstances in this case and after considering the agreements between the parties, we conclude on *de novo* review that the agreement between plaintiff and George and Verna, which provided plaintiff with a one-third share of the proceeds upon sale of the farm, evidenced an express trust.

> "The use of the words 'trust' or 'trustee' is not essential; but it is sufficient if the language used shows that the settlor intended to create a trust. * * * There must be either explicit language expressing the trust or circumstances

which show with reasonable certainty that a trust was intended to be created." *Allen v. Hendrick,* 104 Or 202, 227, 206 P 733 (1922).

The evidence admitted at trial clearly identified the property referred to in the agreement to be the farm.[3]

In *Seymour v. Freer,* 75 US (8 Wall.) 202 (1869), Price and Seymour entered into a written contract whereby Price agreed to devote his efforts to the selection and acquisition of land in various states, with the stipulation that the land would be sold within five years and that one-half of the profits would be paid to Price and the other one-half to Seymour. In return, Seymour agreed to furnish money for the purchases and to take the conveyances in his name. Pursuant to the contract, Price purchased property in Seymour's name. Seymour died in 1837 and Price died in 1854. The five-year period within which the land was to be sold expired in 1840. Upon the death of Seymour, legal title to the property passed to his devisees. The Supreme Court held that Seymour took the legal title in trust for the purpose specified in the agreement, that Seymour was the trustee and that Price was the *cestui que trust.* The Court found that the trust continued after the expiration of the five-year period and that the property, which was to be converted into proceeds, should be regarded as money. The Court affirmed the lower court's decree ordering an equal division of the proceeds between the parties. In answer to the charge that Price had an adequate remedy at law for any injury resulting from a violation of the contract, the Court stated:

"An action at law, sounding in damages, may, undoubtedly, be maintained in such cases for the breach of an express agreement by the trustee, but this in nowise affects the right to proceed in equity to enforce the trust * * * created by the contract. * * * The remedy in equity is the better one. The right to resort to it, under the circumstances of this case, admits of no doubt, either upon principle or authority." *Seymour v. Freer, supra.*

We further conclude that defendants, as heirs of George Klickman, hold the proceeds from the sale of the farm in a constructive trust for the benefit of plaintiff. As

---

[3] Because the agreement did not specifically identify the property concerned, parol evidence was properly considered in resolving the ambiguity. ORS 41.740.

stated by the Supreme Court in *Barnes v. Eastern & Western Lbr. Co.,* 205 Or 553, 596-97, 287 P2d 929 (1955):

"[A] constructive trust is simply a procedural device. A constructive trust does not create in the party favored by it any new substantive rights. Its sole purpose is to enable the courts to afford the victim of the wrong relief in specie. In instances in which the law employs a constructive trust, the doctrine of unjust enrichment governs generally the substantive rights of the parties."

Defendants contend that plaintiff's suit should be barred by laches or estoppel due to plaintiff's delay in bringing suit. We disagree. Plaintiff's right to the proceeds did not mature until the property was sold and proceeds were realized. The property was sold in March, 1976, and plaintiff brought suit approximately one year thereafter.

Defendants also contend that if we impose a constructive trust, plaintiff should be awarded "one-third of the net proceeds of the value of the farm property at the time of one of the three prior sales or dispositions" before the March 16, 1976, sale to the Haskins. Plaintiff's right did not mature until the property was sold and proceeds were thereby created. If the property was not sold during plaintiff's lifetime, neither plaintiff nor his heirs would be entitled to any proceeds or have any claim to the farm property based on this agreement.

Accordingly, we hold that plaintiff is entitled to recover one-third of the net proceeds from the March 16, 1976, sale of the farm. The farm was sold for $47,000. In calculating plaintiff's net recovery, we will reduce the gross sale amount of $47,000 by the legitimate costs of sale and improvements prior to sale, which yields $37,844.82. Pursuant to the trust agreement, plaintiff's one-third share of the net proceeds equals $12,614.94.[4] From this figure we

---

[4] Defendants stated in their brief that the "net amount received by the defendants and Ronald and Melvin Klickman from the sale to Haskin's [sic] was $27,672.02 (Ex. 11)." Defendants also stated that the "total amount of expenses and costs incurred by defendants related to the farm property from the time of the probate of George Klickman's estate until the sale to the Haskin's [sic] amounted to $22,863.60." These claimed expenses include: (1) attorney fees and costs in the probate of the estate of George Klickman, for $996; (2) expenses in borrowing money to purchase the interests in the farm of Patricia and Robert, for $11,372.73; (3) costs of sale of the farm to the Haskins, for $2,080.97; and (4) expenses for improvements to the farm, $8,413.90.

will allow defendants a setoff for expenses for improvements incurred subsequent to their inheritance of the farm. We determine that amount to be $497.52. Thus, plaintiff is entitled to recover from defendants $12,117.42, plus interest at the applicable legal rates from March 16, 1976.

Defendants' other assignments of error do not merit discussion.

Affirmed as modified and remanded for entry of a decree consistent herewith.

---

Exhibit 11, the Lender's Disclosure/Settlement Statement was prepared by the lender to inform the borrowers/buyers and the sellers of the actual costs charged them at closing. This statement shows that the $47,000 contract sales price was reduced by (1) the payoff of the first mortgage loan to the Federal Land Bank, for $15,247.01; (2) closing costs, of $1,772.27; (3) pro rata 1976 taxes of $60.98; (4) 1975 taxes plus interest for $247.72; and (5) to Russell Haskin for work, for $2,000. The total reductions in amount due the sellers was listed as $19,327.98 and the net cash to the sellers listed as $27,672.02. The problem with this net figure, as listed in the statement, is that it includes the payoff of the first mortgage loan to the Federal Land Bank. This $15,247.01 loan was taken out by defendants and Melvin and Ronald for the purpose purchasing Patricia and Robert's interest in the farm and for making improvements to the property. We decline to reduce the $47,000 sales price by the total amount of the first mortgage payoff. We will only allow a $4,078.21 reduction for that portion of the loan proceeds that were used for improvements. Thus, we find the net amount received from the sale of the farm to be $37,844.82.