**In re Vickie Houston CAPPS, Debtor.**

**James Ronald HOUSTON, Plaintiff,**

v.

**Vickie Houston CAPPS, Defendant.**

**Bankruptcy No. 94–05518–BGC–7.**
**Adversary No. 94–00445.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Sept. 29, 1995.

**958**

Robert L. Austin, Birmingham, AL, for James Ronald Houston.

Gary W. Weston, Gardendale, AL, for Vickie Houston Capps.

## MEMORANDUM OPINION

BENJAMIN COHEN, Bankruptcy Judge.

This matter came before the Court for trial on the Complaint filed by Mr. James Ronald Houston. The plaintiff, Mr. James Ronald Houston; the defendant, Ms. Vickie Houston Capps; the attorney for the plaintiff, Mr. Robert L. Austin; and the attorney for the defendant, Mr. Gary W. Weston, appeared. The matter was submitted on the oral stipulation of facts made in open court, the exhibits admitted into evidence as part of that stipulation, the record in the case and the arguments of counsel, who advised the Court that no testimony would be offered.

## I. FINDINGS OF FACT

Ms. Capps and Mr. Houston were granted a divorce from one another on April 11, 1988. Attached to and incorporated in the state court's final judgment of divorce is a settlement agreement executed by both. In the first paragraph of the settlement agreement, Ms. Capps was allowed custody of the parties' two minor children. Regarding the house then owned jointly by Ms. Capps and Mr. Houston paragraph 6 provides:

> The home of the parties, and the real property appurtenant thereto, located at 1356 Downs Road, Mt. Olive, Alabama 35117, shall be the sole property of the plaintiff [Ms. Capps], and said plaintiff shall have the sole use, right to possession and title thereto. Defendant [Mr. Houston] hereby relinquishes all of his right, title and interest thereto in the said home, and further agrees to execute a deed in favor of the plaintiff. After the children have graduated from school, in June 1993, plaintiff shall place the home to be sold on the open market, to be sold for the best possible price, after which the existing encumbrances, if any, on the home shall be satisfied. The net proceeds of the sale shall be divided as follows: The sum of $5,000.00 shall be paid the defendant or half of the net proceeds of the sale, whichever is less; the remaining sum shall go to the plaintiff. In the event that plaintiff does not wish to sell the home in June, 1993, she may pay the sum of $5,000.00 to the defendant instead of selling said home.

Plaintiff's Exhibit No. 3.

On the date the divorce judgment was entered, the house was encumbered by a mortgage in favor of First Federal Savings Bank of Bessemer. Otherwise, the house was unencumbered.

In July, 1992, Ms. Capps borrowed $10,300.00 from Warrior Savings Bank and executed a mortgage on the house to secure repayment of the loan. On November 23, 1993, Ms. Capps sold the house for the sum of $28,500.00. From the proceeds of the sale, Ms. Capps paid $14,370.41 to First Federal Savings Bank of Bessemer in full satisfaction of the first mortgage, $8,551.80 to Warrior Savings Bank in full satisfaction of the second mortgage, and $2,789.00 to Mr. Houston. Ms. Capps retained the remainder of the sale proceeds.

Aggrieved that he did not receive $5,000 from the proceeds of the sale, Mr. Houston filed a petition for rule nisi in the state court asking that Ms. Capps be held in contempt for failure to abide by the terms of paragraph 6 of the divorce decree. A settlement was reached and on June 30, 1994, an order was entered which embodied the terms of the settlement. Under the terms of that order, Ms. Capps was adjudged to be in civil contempt for her failure to pay Mr. Houston "his portion of the proceeds of the sale of the marital residence." The order provided further that Ms. Capps could purge herself of the contempt by paying Mr. Houston the sum of $2,711.10 (the balance of the $5,000 plus a $500 attorney's fee) at the rate of $150 per month. Ms. Capps did not pay the amount required under the order of the state court.

■ Mr. Houston contends that, by granting a second mortgage on the property, Ms. Capps became obligated to pay him

$5,000, since the presence of the second mortgage resulted in his receiving less than that amount from the proceeds of the sale. That contention, of course, presupposes that Ms. Capps was forbidden by the divorce settlement from placing or allowing additional encumbrances on the property, at least to the extent that it would result in Mr. Houston receiving less than $5,000 for his interest in the house. The proper construction of the divorce settlement was firmly established by the state court's June 30 order, and Ms. Capps is now foreclosed from arguing that, under the divorce settlement, she was entitled to obtain a second mortgage on the property and could thereby diminish the amount that Mr. Houston would receive from the house sale proceeds.[1]

## II. SECTION 523(a)(2)(A)

■ Mr. Houston alleges first that the debt owed to him by Ms. Capps is nondischargeable by virtue of 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) of the Bankruptcy Code makes nondischargeable a debt for obtaining money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretense, a false representation, or actual fraud. In order to preclude the discharge of a particular debt because of a debtor's false representation, a creditor must prove that the debtor made a false representation, that at the time the debtor knew the representation was false, that the debtor made the representation with the purpose and intention of deceiving the creditor, that the creditor relied on the representation and the creditor's reliance was reasonably founded, and that the creditor sustained loss or damage as a result of the representation. *In re Hunter,* 780 F.2d 1577, 1578 (11th Cir.1986). "The debtor must be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Id. See also Neal v. Clark,* 95 U.S. 704, 5 Otto 704, 24 L.Ed. 586 (1887); *Gabellini v. Rega,* 724 F.2d 579 (7th Cir.1984); *In re Pedrazzini,* 644 F.2d 756 (9th Cir.1981); *Massachusetts v. Hale,* 618 F.2d 143 (1st Cir.1980); *In re Preston,* 47 B.R. 354 (E.D.Va.1983); *In re Byrd,* 9 B.R. 357 (D.D.C.1981); 124 Cong.Rec. 32399 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 6436, 6453 (Statement of Representative Edwards).

■ An actual, overt representation is the *sine qua non* of Section 523(a)(2)(A). *In*

---

1. "[T]he central inquiry in determining the preclusive effect of a consent judgment is the intention of the parties as manifested in the judgment or other evidence." *In re Halpern,* 810 F.2d 1061, 1063 (11th Cir.1987). Where the factual findings contained in the consent judgment indicate that the parties intended that the judgment operate as a final adjudication of the factual issues contained therein, the bankruptcy court is collaterally estopped from relitigating the same issues in a subsequent dischargeability proceeding. *Id.* at 1064. The wording of the consent judgment entered by the state court on June 30, 1994, clearly shows that Mr. Houston and Ms. Capps intended the judgment to operate as a final adjudication on the question of the proper construction of Ms. Capps duties under the provisions of the divorce decree relating to the marital residence and the question of whether Ms. Capps violated the terms of the settlement agreement either by subsequently encumbering the property so that the division of the sale proceeds could not result in Mr. Houston realizing $5,000, or by not paying Mr. Houston that amount from the sale proceeds. Ms. Capps is, therefore, collaterally estopped from raising and relitigating the same issues in this proceeding.

The conclusion by the state court that Ms. Capps breached the divorce settlement, however, does not, in itself, establish that the damages awarded by the state court in that order are not dischargeable in bankruptcy. Nor does the fact that Ms. Capps was held in civil contempt by the state court foreclose an inquiry into either Ms. Capps understanding of the divorce agreement or her intent both when she executed the agreement and at the time she obtained the second mortgage. "In a civil contempt proceeding, the question is whether the order has been complied with, and intent is not an issue." *Town of Leighton v. Johnson,* 540 So.2d 71, 73 (Ala.1989). "The absence of willfulness does not relieve from civil contempt." *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). Ms. Capps' state of mind was not an issue in the state court proceeding. Therefore, to the extent that Ms. Capps' state of mind is an issue under either of the nondischargeability theories advanced by Mr. Houston in this case, the judgment of the state court cannot be accorded collateral estoppel effect so as to relieve Mr. Houston of the burden of proving that Ms. Capps possessed the requisite state of mind. *See, e.g. In re Ikner,* 883 F.2d 986, 990 (11th Cir.1989) (state court judgment based on "wantonness" does not bind bankruptcy court in dischargeability action based on willfulness).

*re Hunter*, 780 F.2d at 1578. Mr. Houston offered no testimony regarding any specific representations made by Ms. Capps to him and does not describe in his complaint the representations upon which his fraud allegations are based. According to the stipulation of the parties, and the written exhibits admitted into evidence, it is clear that the debt owed to Mr. Houston is based on Ms. Capps noncompliance with the divorce settlement by refusing to give him $5,000 from the house sale and not on any promise or representation made directly to Mr. Houston by her. The only "representation" purportedly made by Ms. Capps directly to Mr. Houston was that she would give Mr. Houston one half of the net proceeds of the house sale over and above the mortgage *existing on the date the divorce settlement was executed,* up to a maximum of $5,000. A promise to perform an act in the future is a present representation and, if the promise is not ultimately performed, may constitute fraud if, at the time the promise was made, the defendant intended not to do the act promised and intended to deceive the plaintiff. *E & S Facilities, Inc. v. Precision Chipper Corporation,* 565 So.2d 54, 59 (Ala.1990). If, when she made that "representation," Ms. Capps knew that she was going to get a second mortgage, or intended to get a second mortgage, and that, as a result, Mr. Houston would not receive $5,000 from the sale proceeds, Mr. Houston might have a legitimate basis under Section 523(a)(2)(A) for averting the discharge of his debt. However, since no testimony was offered by Mr. Houston, the Court has no basis for determining that Ms. Capps did not, in fact, intend to keep her promise when she made it. The mere failure to keep a promise is not, by itself, sufficient to prove an intention to deceive or an intention not to perform the promise. *Mason and Dixon Lines, Inc. v. Byrd,* 601 So.2d 68, 73 (Ala.1992).

## III. SECTION 523(a)(4)

Mr. Houston also contends that the debt owed to him by Ms. Capps is nondischargeable by virtue of 11 U.S.C. § 523(a)(4). Section 523(a)(4) makes nondischargeable debts resulting from fraud or defalcation while acting in a fiduciary capacity. Mr. Houston's contention is that Ms. Capps was, under the terms of the divorce settlement, a fiduciary, duty bound, upon the sale of the house, to pay him $5,000 of the sale proceeds, and her defalcation in that capacity, by failing to give him the full portion to which he was entitled under the terms of the divorce settlement, rendered the debt thereby created nondischargeable. Section 523(a)(4)'s fiduciary defalcation exception is limited in application to situations involving express trusts, and does not have application to trusts implied by law, such as constructive or resulting trusts, or trusts implied from contract.[2] The term "fiduciary" in Section 523(a)(4), according to federal case law, refers to a trustee of an express trust. Whether the relationship between Mr. Houston and Ms. Capps may properly be characterized as an express trust, however, must be determined by reference to Alabama state law.[3]

**2.** *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Quaif v. Johnson,* 4 F.3d 950, 953–954 (11th Cir.1993); *In re Cross,* 666 F.2d 873, 881 (5th Cir.1982); *Carey Lumber Co. v. Bell,* 615 F.2d 370, 374 (5th Cir.1980); *In re Angelle,* 610 F.2d 1335, 1341 (5th Cir.1980).

For example, a factor, for purposes of Section 523(a)(4) does not stand in a "fiduciary capacity" under the terms of the factoring contract. *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 207, 11 L.Ed. 236, 238 (1844). A chattel mortgagor of an automobile does not stand in a fiduciary capacity to the mortgagee, so that failure to remit the proceeds from the sale of the chattel to the mortgagee would not preclude the discharge of the resulting debt under section 523(a)(4). *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 334, 55 S.Ct. 151, 154, 79 L.Ed. 393 (1934). A home building contractor does not stand in a fiduciary capacity to a customer, so that the debt created when the contractor pays general business debts with money advanced to him by the customer to be used in the construction of the customer's home would not be nondischargeable by virtue of section 523(a)(4). *In re Angelle,* 610 F.2d 1335, 1341 (5th Cir.1980), absent a state statute making the relationship an express trust. *Carey Lumber Co. v. Bell,* 615 F.2d 370, 374 (5th Cir. 1980).

**3.** *In re Bennett,* 989 F.2d 779, 784 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993); *Ragsdale v. Haller,* 780 F.2d 794, 796 (9th Cir.1986); *In re Long,* 774 F.2d 875, 878 (8th Cir.1985); *In re Interstate Agency, Inc.,* 760 F.2d 121, 124 (6th Cir.1985); *In re Johnson,* 691 F.2d 249, 251 (6th Cir.1982); *In re Librandi,* 183 B.R. 379, 382 (M.D.Pa.1995); *In re Sonnier,* 157 B.R. 976, 981 n. 12 (E.D.La.1993);

## A. EXPRESS TRUST

 Generally speaking, "a trust is a confidence reposed in one person, by and for the benefit of another, with respect to property held by the former, for that other's benefit." *Gordon v. Central Park Little Boys League*, 270 Ala. 311, 316, 119 So.2d 23, 27 (1960). The person in whom the confidence is reposed and who holds the title to the property is the trustee; and the person for whose benefit the property is so held by the trustee is the *cestui que* trust. *Id.*

 An express trust is created by the direct and positive act of a party. *Phillips v. Phillips*, 223 Ala. 475, 477, 136 So. 785 (1931). It arises as a result of a manifestation of intention to create the trust relationship. Austin W. Scott, *Abridgment of the Law of Trusts* § 2.8 (1960). No express words are necessary if the intention to create the relationship is otherwise manifested. *Gordon v. Central Park Little Boys League*, 270 Ala. at 316, 119 So.2d at 27. The intention to create the relationship may be inferred from the facts and circumstances of a particular case. *Id.* "An express trust may be created even though the parties do not call it a trust, and even though they do not understand precisely what a trust is; it is

sufficient if what they appear to have in mind is in its essentials what the courts mean when they speak of a trust." Scott, *supra*, at 26.

Agreements similar to that entered into by Mr. Houston and Ms. Capps, agreements where one party is to sell property and share the proceeds from the sale with another party, have been held to be express trusts. In *Masters v. Chambers*, 241 Ala. 623, 4 So.2d 261 (1941), the plaintiff and defendant jointly owned a dry-cleaning machine subject to a conditional sales contract. The parties agreed that the defendant was to operate the machine on his own account until he could find someone to buy the machine at a price that would be sufficient to pay off the conditional sales contract and, in addition, pay the plaintiff $321, the amount that the plaintiff originally paid toward the purchase of the machine. The Alabama Supreme Court held that the contract created an express trust in the dry-cleaning machine for the beneficial interest of the plaintiff.

In *Willard v. Sturkie*, 213 Ala. 609, 105 So. 800 (1925), the plaintiff mortgagor became unable to make his mortgage payments. He and the defendant mortgagee entered into an

*In re Schwenn*, 126 B.R. 351, 352 (D.Col.1991); *In re Stone*, 94 B.R. 298, 300 (S.D.N.Y.1988), aff'd, 880 F.2d 1318 (2nd Cir.1989); *In re Schnitz*, 52 B.R. 951, 955 (D.Mo.1985); *In re Baird*, 114 B.R. 198, 202 (9th Cir. BAP 1990); *In re Charfoos*, 183 B.R. 131, 135 (Bankr.E.D.Mich.1994); *In re Johns*, 181 B.R. 965, 970 (Bankr.D.Ariz.1995); *In re Sheffield*, 180 B.R. 814, 829 (Bankr.W.D.La.1995); *In re Van De Water*, 180 B.R. 283, 289 (Bankr.D.N.M. 1995); *In re Cochrane*, 179 B.R. 628, 632 (Bankr. D.Minn.1995); *In re Talmo*, 175 B.R. 775, 777 (Bankr.S.D.Fla.1994); *In re Del Valle Otero*, 174 B.R. 873, 879 (Bankr.D.P.R.1994); *In re Berry*, 174 B.R. 449, 453 (Bankr.N.D.Tex.1994); *In re Christian*, 172 B.R. 490, 495 (Bankr.D.Mass.1994); *In re Cummins*, 166 B.R. 338, 354 (Bankr.W.D.Ark. 1994); *In re Kressner*, 164 B.R. 235, 238 (Bankr. S.D.N.Y.1994); *In re Kaplan*, 162 B.R. 684, 704 (Bankr.E.D.Pa.1993); *In re Hix*, 161 B.R. 401, 404 (Bankr.N.D.Ohio 1993); *In re Jones*, 158 B.R. 731, 733 (Bankr.E.D.Tenn.1993); *In re Curran*, 157 B.R. 500, 509 (Bankr.D.Mass.1993); *In re Dauterman*, 156 B.R. 976, 980 (Bankr.N.D.Ohio 1993); *In re Barrett*, 156 B.R. 529, 533 (Bankr.N.D.Tex.1993); *In re Zrubek*, 149 B.R. 631, 635 (Bankr.D.Mont. 1993); *In re Stokes*, 142 B.R. 908, 909 (Bankr. N.D.Cal.1992); *In re Jackson*, 141 B.R. 909, 915 (Bankr.N.D.Tex.1992); *In re Russell*, 141 B.R. 107, 110 (Bankr.W.D.La.1992); *In re Chavez*, 140 B.R. 413, 422 (Bankr.W.D.Tex.1992); *In re Cole*, 136 B.R. 453, 456 (Bankr.N.D.Tex.1992); *In re Jardula*, 122 B.R. 649, 656 (Bankr.E.D.N.Y.1990); *In re Marino*, 115 B.R. 863, 868 (Bankr.D.Md.1990); *In re Rustad*, 110 B.R. 928, 930 (Bankr.D.Mont.1987); *In re Piscioneri*, 108 B.R. 595, 601 (Bankr. N.D.Ohio 1989); *In re Washington*, 105 B.R. 947, 950 (Bankr.E.D.Cal.1989); *In re Barber*, 105 B.R. 697, 700 (Bankr.M.D.Fla.1989); *In re Wheeler*, 101 B.R. 39, 45 (Bankr.N.D.Ind.1989); *In re Thorsen and Co.*, 98 B.R. 527, 529 (Bankr.D.Col.1989); *In re Crosswhite*, 91 B.R. 156, 159 (Bankr.M.D.Fla. 1988); *In re Ryan*, 90 B.R. 554, 556 (Bankr. S.D.Fla.1988); *In re Kaufman*, 85 B.R. 706, 710 (Bankr.S.D.N.Y.1988); *In re Clemens*, 83 B.R. 945, 951 (Bankr.N.D.Ohio 1988); *In re Twitchell*, 72 B.R. 431, 434 (Bankr.D.Utah 1987), rev'd on other grounds, 91 B.R. 961 (D.Utah 1988), rev'd, 892 F.2d 86 (10th Cir.1989); *In re Weedman*, 65 B.R. 288, 290 (Bankr.W.D.Ky.1986); *In re Hurbace*, 61 B.R. 563, 565 (Bankr.W.D.Tex.1986); *In re Currin*, 55 B.R. 928, 932 (Bankr.D.Col.1985); *In re Schultz*, 46 B.R. 880, 884 (Bankr.D.Nev.1985); *In re Weaver*, 41 B.R. 649, 652 (Bankr.D.Okl.1984); *In re Niven*, 32 B.R. 354, 356 (Bankr.D.Okl.1983); *In re Ballard*, 26 B.R. 981, 984 (Bankr.D.Conn.1983); *In re Murphy*, 9 B.R. 167, 173 n. 3 (Bankr.D.Va.1981).

agreement. Pursuant to the agreement, the plaintiff deeded the land back to the defendant and plaintiff was to remain on the property and maintain the property and assist the defendant in finding a purchaser of the property. In return, the defendant agreed to sell the land and pay the plaintiff all proceeds from the sale over and above the amount of the mortgage debt. The Alabama Supreme Court held that the contract created an express trust in the land for the benefit of the plaintiff.

In *In re Vaughan*, 69 B.R. 74 (N.D.Ala. 1986), a son and his father owned land jointly. The son deeded his interest to the father based on the father's agreement to sell the land and place the proceeds in a certificate of deposit to be held jointly for the life of the parties. The father was to receive the interest from the certificate during his lifetime and the son would receive the certificate upon the father's death. The court held that the agreement regarding the proceeds of the sale created an express trust in the land for the benefit of the son.[4]

▆▆▆▆ An express trust has the following characteristics: (1) it is a relationship; (2) it is a relationship of a fiduciary character; (3) it is a relationship with respect to property; (4) it involves the existence of equitable duties imposed upon the holder of the title to the property to deal with it for the benefit of another; and (5) it arises as a result of a manifestation of an intent to create the relationship. Scott, *supra*, at 24. The relationship between Mr. Houston and Ms. Capps as to their former marital residence has the same characteristics. Their intent to create the relationship is manifested by the language of their settlement agreement. The agreement created a relationship involving confidence, trust, and good faith.

**4.** *See also, F.D.I.C. v. Myhre*, 249 F.2d 887 (9th Cir.1957) (where borrowers to secure indebtedness to bank had given a chattel mortgage which failed adequately to describe the property, and thereafter gave a bill of sale to bank for portion of such property and as integral part of such transaction written agreement was executed which in part provided that bank was to sell property at best price obtainable, deduct sums owing to bank and turn balance over to borrowers, the agreement created an express trust); *Klickman v. Klickman*, 51 Or.App. 457, 625 P.2d 1377 (1981) (agreement between plaintiff and his brother, whereby the plaintiff deeded to brother interest in property owned by them jointly, in consideration of brother's promise that, in the event the property was sold during plaintiff's lifetime, to give the plaintiff one-third of the net proceeds from the sale or disposition, created an express trust); *Searle–Taylor Machinery Co. v. Brown Oil Tools, Inc.*, 512 S.W.2d 335 (Tex.Civ. App.1974) (agreement whereby defendant company was to hold machinery owned by plaintiff on plaintiff's behalf and for purposes of sale, and deliver proceeds from the sale to plaintiff created an express trust so that sales proceeds which came into the hands of defendant company on behalf of plaintiff company constituted trust funds); *State ex rel. Knight Oil Co. v. Vardeman*, 409 S.W.2d 672 (Mo.1966) (owner and payee of check, which was honored by bank on an allegedly unauthorized endorsement, was trustee of an express trust for third party, where owner of check gave third party contingent interest in one-half of proceeds of owner's anticipated lawsuit against bank for conversion); *Lucky Investments, Inc. v. Adams*, 183 Cal.App.2d 462, 7 Cal.Rptr. 57 (1960) (where holding agreements authorized title company, to which certain lots had been conveyed, to deed title to contractor so that a trust deed could be recorded and construction loan obtained, provided title was concurrently deeded back to title company by contractor, to pay owner certain amount from net proceeds of lots, to pay one who held vendor's lien certain amount from owner's share, to pay commission to real estate firm, and, in event of default, to deed lots back to owner when owner executed proper notes and deeds of trust to holder of vendor's lien, holding agreements created express trust, and title company took title as trustee for benefit of the parties); *Powell v. Parks*, 126 Tex. 338, 86 S.W.2d 725 (1935) (conveyance by grantor of mineral leases in return for grantee's agreement to sell leases and divide receipts with grantors created an express trust in favor of grantor); *Hall v. Hall*, 241 Ala. 397, 2 So.2d 908 (1941) (trust created where plaintiff mortgagor deeded title to land to defendant mortgagee in consideration of the defendant's agreement to sell the land to a buyer for no less than $30,-000.00, and to give the proceeds of the sale which remained after satisfaction of the mortgage debt to the plaintiff). *Cf., Gurley v. Lindsley*, 459 F.2d 268 (5th Cir.1972) (consent judgment whereby defendants' predecessor in title was to receive all income from land until certain indebtedness of plaintiffs' predecessor was satisfied and to thereafter pay one-half of the income on the property to the plaintiffs, created express trust in the land and the income in favor of plaintiffs so that defendants held fee in the land and plaintiffs held beneficial interest); *Klein v. Bryer*, 227 Md. 473, 177 A.2d 412 (1962) (a contract providing that in event commissions were paid to broker, he would hold them in trust for salesman and broker to be divided equally, created an express trust in one-half of commissions collected by a title company for broker).

Under the agreement, Ms. Capps, as holder of the title to the property, was bound to deal with the property for the benefit of Mr. Houston. She was required to sell the property and give $5,000 from half of the sale proceeds to Mr. Houston. Ms. Capps was the trustee and Mr. Houston was the *cestui que* trust. Even though the word "trust" does not appear in it, the agreement clearly evinces an intent on the part of Mr. Houston and Ms. Capps to create a relationship which the law recognizes as an express trust.[5]

## B. DEFALCATION

Having determined that Ms. Capps was a fiduciary for purposes of section

523(a)(4), the remaining issue is whether she committed a defalcation in that capacity. There is no question that Ms. Capps violated the terms of the settlement agreement either by subsequently encumbering the property so that the division of the sale proceeds could not result in Mr. Houston realizing $5,000, or by not paying Mr. Houston that amount from the sale proceeds. " 'Defalcation' refers to a failure to produce funds entrusted to a fiduciary." *Quaif v. Johnson,* 4 F.3d 950, 955 (11th Cir.1993). While purely negligent defalcations and defalcations based on mistake of fact, according to some authorities, may not fall within the ambit of the statute, a defalcation, to give rise to a nondischargeable

---

5. The court in *Miranda v. Miranda,* 81 Cal. App.2d 61, 183 P.2d 61 (1947) held that a property settlement agreement which gave the wife the exclusive right to occupy the family home so long as she should not remarry, but provided that upon her remarriage she would sell the property and use the proceeds from the sale for the support and maintenance of minor children, created an express trust, despite the contention that no statement nor words were contained in the agreement to indicate an intention to create a trust. In making that determination, the court stated:

> In making such contention appellant is forgetful of the essentials of a valid trust, to wit, a competent trustor, a property, an indicated intention, a definite disposition of the estate, a trustee and a beneficiary. In addition to the terms of the traditional valid trust the legislature in 1929 provided that a trust in relation to real or personal property or both may be made for any lawful purpose. The language of the agreement in the instant case provides (1) a legal purpose, to wit, maintaining the home for appellant and the minor children; (2) an estate, to wit, the home held by the parties as joint tenants; (3) beneficiaries, to wit, appellant and the minor children; (4) a legal term, to wit, the time during which the children would be entitled to support and maintenance from their parents. With all the elements of a legal trust present, the finding that a valid trust was created by the property settlement was supported by the contract of the parties.

81 Cal.App.2d at 68, 183 P.2d at 66 (citations omitted).

The bankruptcy court in *In re Elrod,* 42 B.R. 468 (Bankr.D.Tenn.1984) held that a state court injunction, attachment and order, entered in a divorce proceeding which enjoined the debtor from transferring funds from a real estate investment account, attached the account and directed that the funds be applied to satisfy child support obligations, created an express trust in the account for the beneficial interest of the debtor's wife and children. The court stated:

> In the instant case there is no vagueness or ambiguity in regard to the essentials of an express trust. The state court had the power of disposition over the property. The court plainly identified the trust res as the J.C. Bradford account. The court manifested its intention that although the debtor was to remain legal owner of the property he was to have no right to receive or use the property for his own purposes. The court made clear that the debtor held the property, and the debtor's attorney received the proceeds therefrom, solely for the purpose of furnishing support to a plainly designated beneficiary, the parties' minor child. The nature, quantity, and even the duration (i.e. the period of minority) of the beneficiary's interest was established. The manner in which the trust was to be performed was set forth in explicit detail. This was an express trust in every way, lacking only the label itself.

42 B.R. at 473.

In *Fulweiler v. Spruance,* 222 A.2d 555 (Del. 1966), a husband entered into an agreement with his former wife. The subject of the agreement was a securities account. Pursuant to the agreement, the husband placed stop-transfer orders on the securities which made it impossible for him to deal with them as his own property. He further obligated himself to deliver the dividends received on the securities to his former wife and children and to provide by will for the ultimate vesting of title to these in his children or their issue. The court held that the agreement created an express trust. "The fact that neither [husband] nor [former wife] thought at the time of entering into the Agreement that they were creating a trust is immaterial if, in fact, what they did had that legal effect." *Id.* at 560. *Cf., In re Radin,* 57 B.R. 346 (Bankr.S.D.Fla.1986) (state court judgment of dissolution of marriage which awarded wife equitable distribution and lump-sum alimony created trust so that money due from debtor to his ex-wife pursuant to judgment were not dischargeable pursuant to section 523(a)(4)).

**964**

debt, does not have to be the result of intentional wrongdoing or have been motivated by criminal intent, ill will, malice, bad faith, or the subjective intent to violate a known fiduciary duty.[6] Ms. Capps has neither alleged nor offered any proof that her encumbering

**6.** *In re Interstate Agency, Inc.*, 760 F.2d 121, 125 (6th Cir.1985); *In re Johnson*, 691 F.2d 249, 257 (6th Cir.1982); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 376 (5th Cir.1980); *Jacobs v. Pierce*, 173 B.R. 20, 25 (D.Mass.1994); *In re Sonnier*, 157 B.R. 976, 984 (E.D.La.1993); *Roy v. Gravel*, 143 B.R. 825, 828 (W.D.La.1992); *In re Failing*, 124 B.R. 340, 344 (W.D.Okl.1989); *In re Smith*, 72 B.R. 61, 63 (N.D.Iowa 1987); *American Ins. Co. v. Lucas*, 41 B.R. 923, 925 (D.Pa.1984); *Martino v. Brown*, 34 B.R. 116, 117 (D.N.M.1983); *In re Kawczynski*, 442 F.Supp. 413, 418 (W.D.N.Y.1977); *Kaufman v. Lederfine*, 49 F.Supp. 144, 145 (S.D.N.Y.1943); *In re Herbst*, 22 F.Supp. 353, 354 (S.D.N.Y.1937); *In re Baird*, 114 B.R. 198, 204 (9th Cir. BAP1990); *In re Gonzales*, 22 B.R. 58, 59 (9th Cir. BAP1982); *In re Charfoos*, 183 B.R. 131, 138 (Bankr.E.D.Mich. 1994); *In re Casey*, 181 B.R. 763, 766 (Bankr. S.D.N.Y.1995); *In re Sheffield*, 180 B.R. 814, 829 (Bankr.W.D.La.1995); *In re Van De Water*, 180 B.R. 283, 291 (Bankr.D.N.M.1995); *In re Black*, 179 B.R. 509, 514 (Bankr.E.D.Tex.1995); *In re Richardson*, 178 B.R. 19, 29 (Bankr.D.Col.1995); *In re Woods*, 175 B.R. 78, 84 (Bankr.D.Colo. 1994); *In re del Valle Otero*, 174 B.R. 873, 881 (Bankr.D.P.R.1994); *In re Christian*, 172 B.R. 490, 495 (Bankr.D.Mass.1994); *In re Pawlinski*, 170 B.R. 380, 389 (Bankr.N.D.Ill.1994); *In re Silba*, 170 B.R. 195, 202 (Bankr.E.D.N.Y.1994); *In re Loevner*, 167 B.R. 824, 827 (Bankr.E.D.Va. 1994); *In re Ballantyne*, 166 B.R. 681, 686 (Bankr.E.D.Wis.1994); *In re Cummins*, 166 B.R. 338, 354 (Bankr.W.D.Ark.1994); *In re Olinger*, 165 B.R. 283, 285–286 (Bankr.D.Col.1994); *In re McDowell*, 162 B.R. 136, 139 (Bankr.N.D.Ohio 1993); *In re Misiaszek*, 162 B.R. 80, 82 (Bankr. D.N.H.1993); *In re Hix*, 161 B.R. 401, 405 (Bankr.N.D.Ohio 1993); *In re Ducey*, 160 B.R. 465, 468 (Bankr.D.N.H.1993); *In re Dauterman*, 156 B.R. 976, 980 (Bankr.N.D.Ohio 1993); *In re Barrett*, 156 B.R. 529, 536 (Bankr.N.D.Tex.1993); *In re Reed*, 155 B.R. 169, 172 (Bankr.S.D.Ohio 1993); *In re Crane*, 154 B.R. 60, 65 (Bankr. E.D.Mich.1993); *In re Grabau*, 151 B.R. 235, 240 (Bankr.N.D.Cal.1991), *aff'd in part and rev'd in part on other grounds*, 151 B.R. 227 (N.D.Cal. 1993); *In re Harper*, 150 B.R. 416, 419 (Bankr. E.D.Tenn.1993); *In re McCaffrey*, 150 B.R. 301, 303 (Bankr.D.R.I.1993); *In re Touchstone*, 149 B.R. 721, 728 (Bankr.S.D.Fla.1993), *modified*, 153 B.R. 955 (Bankr.S.D.Fla.1993); *In re Moffitt*, 146 B.R. 364, 368 (Bankr.S.D.Tex.1992); *In re Fryar*, 143 B.R. 396, 402 (Bankr.W.D.La.1992); *In re Shane*, 140 B.R. 964, 967 (Bankr.N.D.Ohio 1991); *In re Chavez*, 140 B.R. 413, 424 (Bankr. W.D.Tex.1992); *In re Carroll*, 140 B.R. 313, 316 (Bankr.D.Mass.1992); *In re Boudakian*, 137 B.R. 89, 94 (Bankr.D.R.I.1992); *In re Miller*, 133 B.R. 405, 408 (Bankr.S.D.Ohio 1991); *In re Brown*, 131 B.R. 900, 904 (Bankr.D.Me.1991); *In re Chris J. Roy, a Law Corp.*, 130 B.R. 214, 217 (Bankr.W.D.La.1991), *aff'd*, 143 B.R. 825 (W.D.La.1992); *In re Wilson*, 127 B.R. 440, 443 (Bankr.E.D.Mo.1991); *In re Johann*, 125 B.R. 679, 681 (Bankr.M.D.Fla.1991); *In re Reeves*, 124 B.R. 5, 6 (Bankr.D.N.H.1990); *In re Stewart*, 123 B.R. 817, 819 (Bankr.W.D.Tenn.1991); *In re Hodges*, 115 B.R. 152, 155 (Bankr.S.D.Ill.1990); *In re Specialty Plastics, Inc.*, 113 B.R. 915, 923 (Bankr.W.D.Pa.1990), *vacated on other grounds*, *Comm. of Unsecured Creditors of Specialty Plastic v. Doemling*, 127 B.R. 945 (W.D.Pa.1991); *In re Galbreath*, 112 B.R. 892, 900 (Bankr.S.D.Ohio 1990); *In re Oot*, 112 B.R. 497, 501 (Bankr. N.D.N.Y.1989); *In re Wines*, 112 B.R. 44, 45 (Bankr.S.D.Fla.1990); *In re Burgess*, 106 B.R. 612, 621 (Bankr.D.Neb.1989); *In re Manzo*, 106 B.R. 69, 72 (Bankr.E.D.Pa.1989); *In re Guy*, 101 B.R. 961, 991 (Bankr.N.D.Ind.1988); *In re Bobofchak*, 101 B.R. 465, 467 (Bankr.E.D.Va.1989); *In re Hirsch*, 101 B.R. 364, 365–366 (Bankr. S.D.Fla.1989), *aff'd, Hirsch v. Winter*, 108 B.R. 345 (S.D.Fla.1989), *modified*, 920 F.2d 11 (11th Cir.1990); *In re Eichelberger*, 100 B.R. 861, 866 (Bankr.S.D.Tex.1989); *In re Couch*, 100 B.R. 802, 808 (Bankr.E.D.Va.1988); *In re Weber*, 99 B.R. 1001, 1012 (Bankr.D.Utah 1989); *In re Curth*, 98 B.R. 324, 327 (Bankr.S.D.Ohio 1989); *In re Kern*, 98 B.R. 321, 324 (Bankr.S.D.Ohio 1989); *In re Valdes*, 98 B.R. 78, 80 (Bankr. M.D.Fla.1989); *In re James*, 94 B.R. 350, 352–353 (Bankr.E.D.Pa.1988); *In re Mullin*, 91 B.R. 175, 176 (Bankr.S.D.Fla.1988); *In re Crosswhite*, 91 B.R. 156, 160 (Bankr.M.D.Fla.1988); *In re Peters*, 90 B.R. 588, 605 (Bankr.N.D.N.Y.1988); *In re Fontenot*, 89 B.R. 575, 582 (Bankr.W.D.La. 1988); *In re Wright*, 87 B.R. 1011, 1018 (Bankr. D.S.D.1988); *In re Kelley*, 84 B.R. 225, 230 (Bankr.M.D.Fla.1988); *In re Codias*, 78 B.R. 344, 346 (Bankr.S.D.Fla.1987); *In re Gans*, 75 B.R. 474, 490 (Bankr.S.D.N.Y.1987); *In re Twitchell*, 72 B.R. 431, 435 (Bankr.D.Utah 1987), *rev'd on other grounds*, 91 B.R. 961 (D.Utah 1988), *rev'd*, 892 F.2d 86 (10th Cir.1989); *In re Weedman*, 65 B.R. 288, 291 n. 10 (Bankr.W.D.Ky.1986); *In re Anderson*, 64 B.R. 331, 334 (Bankr.N.D.Ill.1986); *In re Alvey*, 56 B.R. 170, 173 (Bankr.W.D.Ky. 1985); *In re Nicholson*, 55 B.R. 645, 648 (Bankr. N.D.Ga.1985); *In re Golden*, 54 B.R. 957, 964 (Bankr.D.Mass.1985); *In re Owens*, 54 B.R. 162, 165 (Bankr.D.S.C.1984); *In re Myers*, 52 B.R. 901, 904 (Bankr.E.D.Va.1985); *In re Wolfington*, 48 B.R. 920, 923 (Bankr.E.D.Pa.1985); *In re Gagliano*, 44 B.R. 259, 261 (Bankr.N.D.Ill.1984); *In re Kraus*, 37 B.R. 126, 131 (Bankr.E.D.Mich. 1984); *In re Martin*, 35 B.R. 982, 989 (Bankr. E.D.Pa.1984); *In re Cowley*, 35 B.R. 526, 529 (Bankr.D.Kan.1983); *In re Niven*, 32 B.R. 354, 355 (Bankr.D.Okl.1983); *In re Kleppinger*, 27 B.R. 530, 532 (Bankr.M.D.Pa.1982); *In re Meek*, 25 B.R. 58, 60 (Bankr.D.Or.1982); *In re Barwick*, 24 B.R. 703, 706 (Bankr.E.D.Va.1982); *In re Mullican*, 24 B.R. 161, 163 (Bankr.E.D.Pa.1982); *In re Thomas*, 21 B.R. 553, 559 (Bankr.E.D.Wis. 1982), *aff'd*, 34 B.R. 103 (E.D.Wis.1983), *vacated*, 729 F.2d 502 (7th Cir.1984); *In re Waters*, 20 B.R. 277, 280 (Bankr.W.D.Tex.1982); *In re Stalnaker*, 19 B.R. 784, 785 (Bankr.S.D.Fla.1982); *In re Levitt*, 18 B.R. 598, 602 (Bankr.E.D.Pa.1982);

*In re Byrd,* 15 B.R. 154, 156 (Bankr.E.D.Va. 1981); *In re Gramza,* 13 B.R. 733, 735 (Bankr. E.D.Wis.1981); *In re Duttenhofer,* 12 B.R. 926, 929 (Bankr.C.D.Cal.1981); *In re Cairone,* 12 B.R. 60, 63 (Bankr.D.R.I.1981); *In re Matheson,* 10 B.R. 652, 656 (Bankr.S.D.Ala.1981); *In re Wheeler,* 10 B.R. 233, 235 (Bankr.N.D.Ga.1981); *In re Lilly,* 1 B.R. 773, 774 (Bankr.D.Md.1980).

As a matter of fact, most authorities hold that any failure of a fiduciary to account for or pay over trust funds, for whatever reason, is a defalcation under section 523(a)(4), so that even breaches of trust resulting from mistake, negligence and ignorance are included. *In re Sonnier,* 157 B.R. at 984; *In re Failing,* 124 B.R. at 344; *In re Smith,* 72 B.R. at 63; *In re Kawczynski,* 442 F.Supp. at 418; *In re Baird,* 114 B.R. at 204; *In re Casey,* 181 B.R. at 766; *In re Sheffield,* 180 B.R. at 829; *In re Van De Water,* 180 B.R. at 291; *In re Woods,* 175 B.R. at 84; *In re del Valle Otero,* 174 B.R. at 881; *In re Pawlinski,* 170 B.R. at 389; *In re Loevner,* 167 B.R. at 827; *In re Cummins,* 166 B.R. at 354; *In re Olinger,* 165 B.R. at 285–286; *In re McDowell,* 162 B.R. at 139; *In re Hix,* 161 B.R. at 405; *In re Ducey,* 160 B.R. at 468; *In re Grabau,* 151 B.R. at 240; *In re Fryar,* 143 B.R. at 402; *In re Shane,* 140 B.R. at 967; *In re Chavez,* 140 B.R. at 424; *In re Carroll,* 140 B.R. at 316; *In re Miller,* 133 B.R. at 408; *In re Brown,* 131 B.R. at 904; *In re Chris J. Roy, a Law Corp.,* 130 B.R. at 217; *In re Wilson,* 127 B.R. at 443; *In re Reeves,* 124 B.R. at 6; *In re Hodges,* 115 B.R. at 155; *In re Specialty Plastics, Inc.,* 113 B.R. at 923; *In re Galbreath,* 112 B.R. at 900; *In re Oot,* 112 B.R. at 501; *In re Wines,* 112 B.R. at 45; *In re Burgess,* 106 B.R. at 621; *In re Manzo,* 106 B.R. at 72; *In re Bobofchak,* 101 B.R. at 467; *In re Eichelberger,* 100 B.R. at 866; *In re Couch,* 100 B.R. at 808; *In re Curth,* 98 B.R. at 327; *In re Kern,* 98 B.R. at 324; *In re Valdes,* 98 B.R. at 80; *In re James,* 94 B.R. at 352–353; *In re Mullin,* 91 B.R. at 176; *In re Crosswhite,* 91 B.R. at 160; *In re Peters,* 90 B.R. at 605; *In re Codias,* 78 B.R. at 346; *In re Gans,* 75 B.R. at 490; *In re Twitchell,* 72 B.R. at 435; *In re Anderson,* 64 B.R. at 334; *In re Owens,* 54 B.R. at 165; *In re Wolfington,* 48 B.R. at 923; *In re Gagliano,* 44 B.R. at 261; *In re Kraus,* 37 B.R. at 131; *In re Cowley,* 35 B.R. at 529; *In re Niven,* 32 B.R. at 355; *In re Meek,* 25 B.R. at 60; *In re Barwick,* 24 B.R. at 706; *In re Thomas,* 21 B.R. at 559; *In re Waters,* 20 B.R. at 280; *In re Levitt,* 18 B.R. at 602; *In re Byrd,* 15 B.R. at 156; *In re Cairone,* 12 B.R. at 63; *In re Matheson,* 10 B.R. at 656; *In re Wheeler,* 10 B.R. at 235.

The "state of mind" issue under section 523(a)(4) was briefly contemplated, but not decided, by the Eleventh Circuit in *Quaif v. Johnson,* 4 F.3d 950 (11th Cir.1993). In *Quaif,* the court found that an insurance agent's intentional transfer of funds from his insurance premium common account to his operating and payroll account and failure to remit the premiums to the insurer constituted a defalcation under section 523(a)(4) where a state statute required the insurance agent to segregate premiums in a common account separate from other types of funds. On the meaning of "defalcation," the court stated:

"Defalcation" refers to a failure to produce funds entrusted to a fiduciary. However, the precise meaning of "defalcation" for purposes of § 523(a)(4) has never been entirely clear. An early, and perhaps the best, analysis of this question is that of Judge Learned Hand in *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2nd Cir.1937). Judge Hand concluded that while a purely innocent mistake by the fiduciary may be dischargeable, a "defalcation" for purposes of this statute does not have to rise to the level of "fraud," "embezzlement," or even "misappropriation." Id. at 512. Some cases have read the term even more broadly, stating that even a purely innocent party can be deemed to have committed a defalcation for purposes of § 523(a)(4). The record before the court indicates that the transfer of funds from the premium account to the operating and payroll accounts was far more than an innocent mistake or even negligence. Quaif does not seriously contest that the transfer was intentional. Therefore, the court must conclude that the failure to remit premiums to Ambassador constituted a defalcation within the meaning of § 523(a)(4).

4 F.3d at 950, 955 (citations omitted).

The opinion in *Quaif* is a verbatim adoption of the opinion of the District Court appealed from. Since the district court found as a matter of fact that the conduct of the debtor was "far more than an innocent mistake or even negligence," the circuit court was not asked to decide whether an unintentional or negligent "defalcation" could result in a nondischargeable debt and did not address the question.

Likewise, in this case, Ms. Capps intentionally placed a second mortgage lien on the house and intentionally did not pay Mr. Houston $5,000 from the proceeds of the sale of the house. Her attorney argues that the divorce decree is unclear and subject to interpretation. The implication is either that the divorce court based its decision that Ms. Capps violated the settlement agreement on an erroneous interpretation of the agreement or that Ms. Capps unwittingly violated the settlement agreement as a result of a mistaken belief that the agreement allowed her to obtain a second mortgage on the property without diminishing her right to half of the house sale proceeds, even if Mr. Houston would receive less than $5,000. As to the first implication, there is no question but that the settlement agreement is unclear, and may not, by its terms, strictly prohibit that which Ms. Capps did. However, this Court may not look behind the judgment of the state court which established the proper interpretation of the agreement, especially since the judgment was based on Ms. Capps admission that she had violated the settlement agreement. As to the second implication, even in jurisdictions which may hold that debts based on negligent and mistaken defalcations are dischargeable, the word "mistake" refers only to mistakes of facts, so that debts based on defalcations resulting from "mistakes of law" are not dischargeable under section 523(a)(4). "Even assuming that the rule that a mistake of fact may take a misappropriation out of the ambit of

the property and refusal to pay Mr. Houston $5,000 from the sale proceeds were the result of negligence or mistake of fact, or were otherwise caused by anything other than her own volition. Those acts, therefore, constituted defalcations of Ms. Capps' duties under the trust in the residence formed for the benefit of Mr. Houston. Because of Ms. Capps' defalcations, Mr. Houston received $2,211.00 less from the sale of the house than he was entitled to under the divorce settlement agreement. The debt owed by Ms. Capps to Mr. Houston, in the amount of $2,211.00 is, consequently, not dischargeable in this bankruptcy case, by virtue of section 523(a)(4) of the Bankruptcy Code.[7]

Such a holding does not run afoul of the Eleventh Circuit's decision in *TranSouth Financial Corp. of Florida v. Johnson*, 931 F.2d 1505 (11th Cir.1991). In *TranSouth*, a creditor had a contract with the debtor which provided that the debtor would be liable for the creditor's attorney fees in the event that the debtor defaulted and the creditor had to hire an attorney to collect the balance due on the contract. The bankruptcy court determined that the primary debt owed to the creditor on the contract had resulted from the debtor's fraud and was nondischargeable under section 523(a)(2). The Eleventh Circuit held that the attorney's fees which the creditor had become entitled to under the contract were also nondischargeable.

There are two major points which distinguish the situation in this case from the situation in *TranSouth*. First, in this case, there is no provision in the settlement agreement obligating Ms. Capps to pay Mr. Houston's attorney's fee in the event of her default. The debt which Ms. Capps agreed to pay Mr. Houston, therefore, does not include attorney's fees. Second, the debt in *TranSouth* was procured by the debtor's fraud, a consideration which clearly influenced the court's decision, as indicated by the following passage:

> Allowing TranSouth to recover attorney's fees under the circumstances of this case will not contravene the "fresh start" policy of the Bankruptcy Code, which was designed to protect the honest debtor. The debtor attempting to abuse the proceedings of bankruptcy is not entitled to the complete medley of Bankruptcy Code protections. The Bankruptcy Code thereby attempts to discourage such abuse. "Fraudulent conduct is best discouraged, not only by denying discharge, but also by ... [recognizing that] the creditor who has been defrauded is entitled to all of its rights under the contract, including reasonable attorney fees." *In re Sears (Pacific Bancorporation v. Sears)*, 102 B.R. 781, 785 (Bankr.S.D.Cal.1989) (quoting *Chase Manhattan Bank v. Birkland*, 98 B.R. 35, 37 (Bankr.W.D.Wash.1988)).

931 F.2d at 1508–1509.

In this case, Ms. Capps has not engaged in any fraudulent activity. Indeed, her actions may have been guided by a purely good faith but mistaken interpretation of the settlement agreement and no evidence has been presented which indicates that Ms. Capps is attempting to abuse the bankruptcy process in any manner. As indicated before, section 523(a)(4) requires no wrongful intent. Therefore, the policy consider-

---

17(a)(4) is still valid law, it has no application here, because Bell is charged with knowledge of his legal duties under the lien trust laws, and he has suggested no possible mistake of fact that might have excused him from that duty." *Carey Lumber Co. v. Bell*, 615 F.2d 370, 376 (5th Cir.1980) (section 17(a)(4) is the Bankruptcy Act equivalent of Bankruptcy Code section 523(a)(4)). *See also, In re Moffitt*, 146 B.R. at 368. *Cf., In re Hammond*, 98 F.2d 703, 705 (2nd Cir.1938), *cert. denied*, 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1938); *In re Richardson*, 178 B.R. at 29; *In re Brown*, 131 B.R. at 904; *In re Chris J. Roy, a Law Corp.*, 130 B.R. at 217; *In re Burgess*, 106 B.R. at 621; *In re Levitt*, 18 B.R. at 602. A "mistake of law" is a mistake regarding the legal effect of a purposeful act. *Jones v. Hernando Bank*, 194 Miss. 474, 13 So.2d 31, 32 (1943). "A 'mistake of law' occurs where a person is truly acquainted with the existence or nonexistence of facts, but is ignorant of or comes to an erroneous conclusion as to their legal effect." *Board of Education of Passaic v. Board of Education of Township of Wayne*, 120 N.J.Super. 155, 293 A.2d 445, 450 (Law Div.1972). An erroneous or mistaken interpretation of a contract is a "mistake of law." *J.W. Bateson Co. v. U.S.*, 308 F.2d 510, 515 (5th Cir.1962); *Acme Markets, Inc. v. Valley View Shopping Center, Inc.*, 342 Pa.Super. 567, 493 A.2d 736, 738 (1985); *American Oil Service, Inc. v. Hope Oil Co.*, 233 Cal.App.2d 822, 44 Cal.Rptr. 60, 65 (1965); *Newton v. Newton*, 202 Va. 515, 118 S.E.2d 656, 659 (1961); *Hinson v. Byrd*, 259 Ala. 459, 463, 66 So.2d 736, 739 (1953). *Cf., Lee v. Hunt*, 631 F.2d 1171, 1177–1178 (5th Cir. 1980) (party who signed contract under erroneous belief that he would not be bound until his wife and descendants executed the contract, signed contract under mistake of law), *cert. denied*, 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981); *First National Bank of Birmingham v. Perfection Bedding Co.*, 631 F.2d 31, 33 (5th Cir.1980) (stockholders' mistaken belief that excess assets of pension fund, which was terminated prior to negotiations for sale of the stock, did not pass to purchaser of corporation's stock was a mistake of law). Even if Ms. Capps actions were the result of an erroneous interpretation of the settlement agreement, they were, by that fact, no less intentional, and the resulting debt to Mr. Houston, therefore, cannot be discharged.

7. The debt owed by Ms. Capps for the attorney fees awarded by the state court is dischargeable. That is not a "debt for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4).

## IV. CONCLUSION

Based upon the foregoing discussion, the complaint filed by the plaintiff in the above styled cause, must, to the extent indicated above herein, be granted. A separate order will be entered in accordance with this memorandum opinion.

ations which guided the court in *TranSouth* are not be applicable in this case to direct a similar result.